**UNITED STATES of America, Plaintiff-Appellee,**

v.

**William Charles MOONEY, Defendant-Appellant.**

**No. 80–2802.**

United States Court of Appeals, Seventh Circuit.

Argued May 15, 1981.

Decided July 17, 1981.

---

James C. Reiher, Perry, First, Reiher & Lerner, S. C., Milwaukee, Wis., for defendant-appellant.

Mel S. Johnson, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before FAIRCHILD and PELL, Circuit Judges,* and LARSON, Senior District Judge.**

\* At the time of oral argument Judge Fairchild was Chief Judge of the Circuit. As of July 1, 1981 he resumed the title of Circuit Judge.

\*\* Earl R. Larson, Senior District Judge of the District of Minnesota, is sitting by designation.

1. The defendant does not allege that the Government failed to honor other conditions of the bargain—to move to dismiss another count

PELL, Circuit Judge.

The defendant, William Mooney, appeals (1) a judgment of the district court sentencing him to the maximum term of imprisonment for armed bank robbery, and (2) an order denying the defendant's motion to reduce the sentence.

## I.

The defendant pled guilty to a charge of armed bank robbery, a violation of 18 U.S.C. §§ 2, 2113(a), (d), in exchange for certain commitments by the Government including a promise to recommend that the defendant be sentenced to ten years imprisonment.[1] After the defendant twice acknowledged that he understood that the court was not bound by the Government's sentence recommendation, the court accepted Mooney's guilty plea. At a subsequent sentencing hearing, the Government recommended, and defense counsel argued in favor of, a term of ten years imprisonment. Upon reviewing the presentence report and considering numerous relevant factors including mitigating circumstances, the district judge sentenced Mooney to the maximum term of 25 years incarceration.

The trial judge sentenced the defendant under 18 U.S.C. § 4205(b)(2) which provides that "the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the [United States Parole] Commission may determine." The judge indicated that he felt the defendant should be incarcerated for at least ten years, and expressed concern that if sentenced for a lesser term under a different sentencing provision, Mooney might be released in as little as three years. The court reasoned that although the maximum sentence was im-

pending against the defendant; to make every possible effort to place Mooney in a certain institution for treatment of his multiple sclerosis condition; and to dismiss charges related to this same bank robbery against Mooney's codefendant. The Government also advised the defendant that the state prosecutor had indicated that he would not seek state prosecution for any offense arising out of the bank robbery.

posed, § 4205(b)(2) would allow the Parole Commission to release the defendant at any time Mooney's health required.

The defendant subsequently filed a motion pursuant to Fed.R.Crim.P. 35 to reduce his sentence to ten years. After the Government filed a motion opposing the defendant's motion, the defense filed a reply brief attacking the Government's position as a breach of the plea agreement. The district court thereafter denied the motion for reduction and noted that it need not decide whether the Government's opposition to the Rule 35 motion breached the plea agreement because the court had not been influenced by the Government's position.

## II.

The defendant urges this court to exercise its supervisory power to rule that, in the absence of new factors, a prosecutor's promise to recommend a particular sentence forbids the Government from thereafter opposing a defendant's Rule 35 motion to reduce a sentence imposed in excess of that recommended. In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the defendant agreed to plead guilty in exchange for the prosecutor's promise to make no recommendation as to sentence. At the sentencing hearing, however, a different prosecutor recommended that the defendant receive the maximum penalty. The Court held that the Government's change in position, while probably inadvertent, could not be excused because "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Id.* at 262, 92 S.Ct. at 499. While indicating that it did not doubt the district court's statement that it was uninfluenced by the prosecutor's recommendation, the Court nevertheless concluded that the interests of justice, and the recognition of prosecutorial duties in relation to plea bargaining, would be best served by re-

manding the case for reconsideration.[2] *Id.* at 262–63, 92 S.Ct. at 498–99.

In *United States v. Ewing*, 480 F.2d 1141 (5th Cir. 1973) (per curiam), the prosecutor agreed, *inter alia*, not to oppose the defendant's request for probation if the defendant pled guilty. Although the Government did not oppose probation at the sentencing hearing, the district judge refused to grant probation. At a second hearing to consider the defendant's request to reduce his sentence, however, the prosecutor vigorously opposed the defendant's request for probation. The appellate court ruled that both the sentencing and Rule 35 proceedings "were integral parts of the sentencing process in this case. Surely when Ewing obtained the Government's promise not to oppose probation in exchange for his plea of guilty, he did so in the expectation that the benefits of that promise would be available throughout the proceedings relevant to the determination of his sentence." *Id.* at 1143. The court remanded the case to allow the Rule 35 motion to be heard by a different judge without Government opposition to probation.

The defendant urges that *Ewing* controls this case, and argues that this court must either accept or reject *Ewing* in deciding the instant case. We disagree. *Ewing* by no means sets up a *per se* rule which would extend prosecutors' obligations regarding sentencing recommendations automatically to Rule 35 proceedings. In fact, cases subsequent to *Ewing* have interpreted it narrowly. In *United States v. Johnson*, 582 F.2d 335, 337 (5th Cir.) (per curiam), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 732, 58 L.Ed.2d 711 (1978), for example, the Fifth Circuit cautioned that *Ewing* "does not give the defendant the right to present an unopposed Rule 35 motion." While the facts of *Johnson* are distinguishable from those of the present case—Johnson had misrepresented information in his Rule 35 motion—the court nonetheless interpreted its prior decision to mean that "[t]he government violates *Ewing* only when its opposition violates the essence of the plea bargain." *Id.*

2. Likewise, the outcome of this appeal does not depend upon the district court's statement that its decision was not influenced by the Government's opposition to Mooney's Rule 35 motion.

486

A plea bargain is a contract, the terms of which necessarily must be interpreted in light of the parties' reasonable expectations. *United States v. Arnett*, 628 F.2d 1162, 1164–65 (9th Cir. 1979). The resolution of each case depends upon the essence of the particular agreement and the Government's conduct relating to its obligations in that case. Thus, *Ewing's* finding that the sentence and the Rule 35 "proceedings were integral parts of the sentencing process *in this case*," 480 F.2d at 1143 (emphasis added), does not control the inquiry in the case at bar.

*Ewing* involved a promise that the Government would not oppose the defendant's request for probation, not that it would recommend a specific sentence. Thus, our case is more like *Bergman v. Lefkowitz*, 569 F.2d 705 (2d Cir. 1977), wherein the defendant pled guilty in exchange for the state prosecutor's promise to recommend that the defendant receive no sentence beyond that already imposed in a federal case. Although the prosecution did make the recommendation at sentencing, the state judge sentenced the defendant to a one-year term to run consecutive to the federal sentence. Subsequently, the state prosecutor opposed the defendant's motion to reduce his sentence.

In *Bergman*, as here, the court warned that it was not bound to follow the prosecutor's sentence recommendation. *Bergman* held that the agreement to recommend no additional sentence did not require the prosecutor to join in any appeal or postconviction proceedings to attack the sentence imposed. The court reasoned that the Government was bound only not to cast doubt on its recommendation, and ruled that the prosecutor's opposition to the motion to reduce the sentence did not violate

that obligation. *Id.* at 716. *Bergman* found *Ewing* inapplicable: "This case is thus readily distinguishable from *United States v. Ewing*, 480 F.2d 1141 (5th Cir. 1973), where the Government agreed not to oppose a probated sentence and then did precisely that on a Rule 35 motion." 569 F.2d at 716.[3]

Considering the particular facts of the instant case as a whole, we do not regard the Government's conduct to have violated the specific terms of the plea agreement. As in *Bergman*, the plea agreement in this case contains no explicit promise not to oppose a Rule 35 motion to reduce the defendant's sentence. It does not appear that the parties actually contemplated this situation. In the absence of any indication that the parties expected the Government not to oppose a Rule 35 motion, we would hesitate to imply such a condition. The prosecutor honored his commitment to make the agreed sentence recommendation at the sentencing hearing. The short motion in opposition to the defendant's Rule 35 motion essentially recounted the details of the sentencing proceeding. The defendant complains that the prosecutor's position was not neutral, as the Government contends, however, particularly because of the Government's inclusion of the statement that "Mooney's sentence is lawful, appropriate, not excessive, justified, and as such, his motion should be denied." We are not prepared, however, to say that this plea agreement necessarily required the Government to remain wholly neutral. Additionally, while this language may perhaps be characterized as strong, it must be viewed as what it is—one sentence in an otherwise essentially neutral restatement of the events of the sentencing hearing.[4]

3. The defendant seeks to distinguish *Bergman* solely on the basis that the difference between the recommended and actual sentences there was one year, whereas the discrepancy in the present case is fifteen years. This consideration, however is irrelevant to the essential inquiries of whether (1) the prosecutor's obligation in this case extended to the Rule 35 motion, and (2) the prosecutor breached the agreement.

4. The defendant's reliance on *Bercheny v. Johnson*, 633 F.2d 473 (6th Cir. 1980), and *United States v. Bowler*, 585 F.2d 851 (7th Cir. 1978), is inapposite. In *Bercheny*, the prosecutor agreed not to oppose a psychiatric evaluation of the defendant for inclusion in the presentence report if ordered by the court. Although the court ordered the evaluation, it never was completed, and the defendant was sentenced without the benefit of the evaluation.

It would be inappropriate to prohibit the Government from ever opposing a Rule 35 motion for sentences which exceed the recommendation agreed upon in the plea bargain because matters could occur in the interim which might make the earlier recommendation inappropriate. Conversely, neither do we necessarily sanction Government opposition in such cases. A slight change in facts could well mandate the opposite result. Thus, in future cases of this nature, the Government would proceed with a greater sense of propriety, and the defendant's interests would more certainly be protected, if the Government responded to such a defendant's Rule 35 motion by stating that it had previously recommended a particular sentence, that the court had declined to follow the recommendation, and that the Government does, or does not, have any reason to retract its previous recommendation.

### III.

The appellant contends that the district court's imposition of the maximum sentence constituted an abuse of discretion. District judges exercise substantial discretion over sentencing which will not be disturbed on appeal absent a clear showing of gross abuse of discretion. *United States v.*

*Ledesma,* 632 F.2d 670, 679 (7th Cir. 1980). The mere fact that the defendant received the maximum term of imprisonment allowed by statute will not warrant appellate consideration, *see, e. g., United States v. Mitchell,* 625 F.2d 158, 162 (7th Cir.), *cert. denied,* 449 U.S. 984, 101 S.Ct. 402, 66 L.Ed.2d 247 (1980); *United States v. Schmucker-Bula,* 609 F.2d 399, 404 (7th Cir. 1980), because sentences set within statutory limits are generally unreviewable. *United States v. Mitchell, supra,* 625 F.2d at 162.

Had the district court followed a purely mechanical policy of sentencing defendants to maximum terms with no consideration for individual circumstances, it would have abdicated its responsibility actually to exercise its discretion, *see, e. g., Woosley v. United States,* 478 F.2d 139, 143–44 (8th Cir. 1973) (en banc), in which case appellate scrutiny might be appropriate. *Id.; see United States v. Main,* 598 F.2d 1086, 1094 (7th Cir.), *cert. denied,* 444 U.S. 943, 100 S.Ct. 301, 62 L.Ed.2d 311 (1979).[5] But this is not such a case.

Armed bank robbery is a serious life-endangering offense. Mooney held at least four persons at gunpoint with a loaded gun. He escaped with over $16,000 and the

In *Bowler,* the Government agreed to consider reducing its sentence recommendation depending upon the extent of the defendant's *cooperation, his health, and other factors.* This court viewed the Government's obligation to be facially ambiguous, but ultimately found an implicit promise that the Government would consider, and make a recommendation based upon, the enumerated factors. The court ruled that such an evaluation should have been made a matter of record at the time of sentencing. Both *Bercheny* and *Bowler* involved explicit promises which were not honored at the time of sentencing. This case is also unlike *United States v. Arnett,* 628 F.2d 1162, 1163 (9th Cir. 1979), in which the Government promised to take *no* position regarding "the appropriate sentence," but vigorously opposed the defendant's motion to reduce his sentence.

5. *United States v. Main* also indicated that review would not be foreclosed if it could be shown that the sentencing judge relied on improper or unreliable information. 598 F.2d at 1094. Mooney alleges that the court imposed a sentence in excess of the recommended ten years because it "relied heavily" on the as-

sumption that Mooney had previously been released from a ten year sentence after serving only three years:

> ... I think that you really should be locked up at least ten years. But a ten year sentence means eligible to get out in three years. There's a tendency to let you out in three years. I think for your own good you really have to be locked up, as well as for the good of the other people.

Mooney asserts that he has not in fact been released in the past after serving one-third of his sentence, but instead was recently released after serving four years of a six year sentence which had been reduced from an original term of ten years. Even assuming *arguendo* that the district judge did erroneously believe that the defendant had previously been released in three, not four years as he contends, we do not regard the judge's isolated comment, in light of all the other factors he relied upon, to indicate an improper reliance on unreliable information such as would justify a finding of abuse of discretion.

wallet of the bank manager. Moreover, the defendant committed the crime with the unwitting aid of his adult nephew whom Mooney had deceived into driving to and from the bank.

The court reviewed the presentence report, heard defense counsel's arguments in mitigation of sentence, and considered the defendant's likelihood of rehabilitation. The judge was concerned by Mooney's substantial criminal record which included five prior felony convictions, four of which were for armed bank robbery.[6] The judge placed significance on the fact that Mooney had committed his latest bank robbery while on parole. When the court inquired of the defendant, ". . . I think your record is such that you and I can agree that every time you are at large, why, you rob a bank or do something like that. Right?," Mooney answered, "Yes, sir." The court noted, however, that it was not considering murder charges pending against the defendant in New York because the circumstances surrounding the charges were unclear. Furthermore, the court made allowances for Mooney's multiple sclerosis condition. The judge recommended that Mooney be committed to a particular penal institution for treatment of his disease. Prompted by his concern that Mooney's condition might rapidly deteriorate, the judge sentenced him under 18 U.S.C. § 4205(b)(2) which allows parole at any time, at the discretion of the Parole Commission. Far from refusing to exercise its discretion, therefore, the trial court's consideration of numerous appropriate factors[7] illustrates that its approach was anything but mechanistic. *See United States v. Fountain,* 642 F.2d 1083, 1097–98 (7th Cir. 1981).

 A Rule 35 motion to reduce sentence similarly rests within the sound discretion

of the district court. *United States v. Brown,* 428 F.2d 1191, 1193 (7th Cir.), *cert. denied,* 400 U.S. 941, 91 S.Ct. 238, 27 L.Ed.2d 245 (1970). The court considered the defendant's arguments and reasoned, *inter alia,* that

> [i]t is the opinion of this Court now, as it was at the time of sentencing, that Mr. Mooney has a propensity to commit serious crimes which necessitates his removal from society for a significant length of time. In view of the defendant's character and past history, the sentence imposed is not excessive and it does serve to carry out the Court's intent. . . .

The judge's denial of Mooney's Rule 35 motion was not an abuse of discretion for the same reasons that the original sentencing decision was valid.

### IV.

Under 18 U.S.C. § 4205, a district court can select one of three sentencing options when it determines that a defendant should be incarcerated for a year or more. Section 4205(a), the most frequently-used subsection, allows parole eligibility for a prisoner after serving one-third of the sentence which, in this case, would result in parole eligibility after eight years and four months. Under section 4205(b)(1), a judge can set a minimum term after which the defendant will become eligible for parole, which term can be less but not more than, one-third of the sentence. In this case, therefore, the court could have set a minimum term not exceeding eight years and four months under the second subsection. The court, however, chose the third option, § 4205(b)(2) which provides that "the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be

---

**6.** Mooney had been previously convicted of two federal armed bank robberies, two state armed bank robberies, and burglary, and possessed an unfavorable juvenile record.

**7.** The defendant urges this court to adopt the principles of the *ABA Standards Relating to Sentencing Alternatives and Procedures* as mandatory factors for consideration by district courts in sentencing. No case has been

brought to our attention which would require consideration of those particular factors. Because mandatory consideration of a certain list of factors would unnecessarily restrict the district court's broad discretion, and could easily lead to the very mechanistic analysis the defendant decries here, we decline to adopt the ABA standards.

released on parole at such time as the Commission may determine." Although the court's maximum sentence indicated that the judge clearly intended Mooney to serve a substantial prison sentence, he wanted to ensure that Mooney could be released whenever his health deteriorated to the point that he no longer posed a threat to society regardless of whether or not he was actually rehabilitated. Because no one could know when or if Mooney might reach that point, the judge declined to set any minimum term during which Mooney could not be paroled.

█ The defendant, however, argues that while sentencing under this provision might appear to benefit him, the court's remarks during sentencing actually operate as a mandate to the Parole Commission not to release Mooney under any circumstances except for severe health impairment. Contending that "[t]he healthier he remains, the longer he stays in prison," the defendant urges that the court's purported restriction of Parole Commission discretion rises to the level of cruel and unusual punishment under the Eighth Amendment, and denies Mooney equal protection in violation of the .due process clause of the Fifth Amendment. The defendant relies upon the judge's statements that:

> ... [T]he court can sentence him under [4205(b)(2)], which makes him eligible for parole immediately and that would give the Parole Commission the discretion to release him in case the physical condition deteriorates to the point where he is no longer a risk to have out of the institution.
>
> . . . . .
>
> I am concerned about your multiple sclerosis, and so I am going to give the parole authorities in this case, if your physical condition deteriorates, the discretion to release you, if that becomes necessary. Under [4205(b)(2)] which means you will be eligible for parole. But I don't want you to believe you are going to get parole, because you won't get it.

Although the judge obviously favored early release only if Mooney's health seriously

deteriorated, and may have assumed that the Parole Commission would reach the same conclusion upon its own later consideration of the case, the court did not purport to deny the power of the Parole Commission to release the defendant according to its discretion. The judge advised Mooney that:

> In view of the fact [that] you have multiple sclerosis and are suffering from that illness, I am going to impose sentence under the provisions of [4205(b)(2)], Title 18 of the U.S. Code *which makes you eligible for parole at such time as the Parole Commission may determine.* That's only because of your health situation that I am using that provision of the U.S. Code.

(Emphasis added.)

█ Even had the judge intended the Commission to be bound by his recommendation, "sentencing judges do not have the authority 'to supervise, control, or second-guess the Parole Board.'" *Edwards v. United States*, 574 F.2d 937, 942 (8th Cir.), *cert. dismissed*, 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1978), quoting *United States v. White*, 540 F.2d 409, 411 (8th Cir. 1976). Because a court's attempted control of the Parole Commission's discretion would therefore be futile, its directive would be without legal significance. In the case at bar, the Parole Commission itself controls the actual date of Mooney's release in the exercise of its discretion consistent with its own guidelines and independent of the court which pronounced sentence.

For the reasons stated herein, the judgment of the district court imposing the maximum sentence and the order denying the defendant's motion to reduce his sentence are affirmed.