## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 36083

STATE OF IDAHO,

    Respondent,

v.

JESSY BENJAMIN LONGEST,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**Boise, August 2010 Term**

**2010 Opinion No. 106**

**Filed: October 6, 2010**

**Stephen W. Kenyon, Clerk**

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County.  The Honorable Michael E. Wetherell, District Judge.

The judgment of the district court is affirmed.

Greg S. Silvey, Kuna, for appellant.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Nicole L. Schafer argued.

_____

J. JONES, Justice.

Jessy Benjamin Longest appeals his judgment of conviction for failing to register as a sex offender. We affirm.

### I.
### Factual and Procedural History

In June of 2008, the State charged Jessy Longest with failure to register as a sex offender in violation of Idaho Code section 18-8309. Longest pleaded guilty to the offense pursuant to an oral plea agreement:

> DEFENSE COUNSEL: It's our position at this point that we are going to enter a guilty plea pursuant to a plea agreement with the State where the State will recommend—he's going to plead guilty to failure to register. The State will have

1

its recommendation of three years fixed, plus seven years indeterminate, for a total of ten, with probation, capped with 180 days Ada County Jail. Fine, restitution, public defender reimbursement to be determined by the Court.

And the defendant agrees to cooperate with the presentence investigation and any and all evals that are ordered by the Court. And I think that's all. The defense is free to argue for less.

THE COURT: Is that the State's understanding, Counsel?

THE STATE: Yes, Your Honor.

The district court reiterated the oral plea agreement at the subsequent sentencing hearing:

THE COURT: The Court will note that its notes do reflect that the State agreed that it would not argue for an underlying sentence in excess of ten years with three fixed and seven indeterminate suspended for probation, a 180 day Ada County Jail cap.

Consistent with the plea agreement, the State recommended that Longest receive a ten-year sentence with three years fixed and probation with 180 days of jail. The district court rejected the recommendation and sentenced Longest to a ten-year term of imprisonment, with five years fixed, but retained jurisdiction for 180 days.

At the close of the retained jurisdiction period, Longest appeared back before the district court with a recommendation from the North Idaho Correctional Institution (NICI) that the court relinquish jurisdiction. The State, without objection from defense counsel, argued that the court should relinquish jurisdiction and impose the underlying sentence based on Longest's poor rider performance. Defense counsel, while recognizing that "it is very unlikely that the Court grants him probation" given the recommendation in the NICI report, argued for probation or, in the alternative, for an additional period of retained jurisdiction. At the conclusion of the hearing, the court stated that Longest's rider report was "one of the worst" it had ever seen and relinquished jurisdiction. Longest then filed a timely appeal from the judgment of conviction and order relinquishing jurisdiction, arguing for the first time on appeal that the State violated the plea agreement by recommending that the court relinquish jurisdiction following the period of retained jurisdiction.

2

## II.
## Issue on Appeal

I.      Whether Longest's allegation that the State breached the plea agreement amounts to fundamental error, such that it may be argued for the first time on appeal.

## III.

### A.      Standard of Review

Our recent decision in *State v. Perry* clarified the standard of review for cases in which an alleged error is not followed by a contemporaneous objection. No. 34846, 2010 WL 2880156 (Idaho July 23, 2010). There, we held that as a general rule we will not consider error not preserved for appeal through an objection at trial. *Id.* at *13. "This limitation on appellate-court authority serves to induce the timely raising of claims and objections, which gives the [trial] court the opportunity to consider and resolve them." *Id.* (quoting *Puckett v. U.S.*, 129 S. Ct. 1423, 1428 (2009) (alteration in original)). The trial court is ordinarily in the best position to determine the relevant facts and to adjudicate the dispute. *Id.* "[R]equiring a contemporaneous objection prevents the litigant from sandbagging the court, i.e., 'remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor.'" *Id.* (quoting *Puckett*, 129 S. Ct. at 1428). However, "[a] fair trial in a fair tribunal is a basic requirement of due process." *Id.* (quoting *Caperton v. A.T. Massey Coal Co.*, 129 S. Ct. 2252, 2259 (2009) (alteration in original)). Accordingly, when an error is not accompanied by a contemporaneous objection at trial, the error is reviewed under Idaho's fundamental error doctrine. *Id.* at *15. Under this doctrine,

> in cases of unobjected to fundamental error: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*Id.*

### B.      Fundamental Error

Longest's claim of error does not pass muster under Idaho's fundamental error doctrine and will not be reviewed for the first time on appeal. Longest has not satisfied the second prong of the fundamental error doctrine because there is nothing in the record clearly supporting his claim that the State breached the plea agreement. Longest argues that a plea agreement, which

3

does not contain a specific limitation on its duration, persists indefinitely at every stage of the sentencing proceedings, including a retained jurisdiction hearing. Thus, Longest argues that because the State agreed to recommend probation pursuant to the plea agreement, the State breached the agreement by recommending the court relinquish jurisdiction and execute the original sentence at the retained jurisdiction hearing.

In order to establish fundamental error, Longest must demonstrate that the alleged error is "clear or obvious." *Id*. Longest is unable to make a showing of clear or obvious error in this case, as he presents no authority, nor was this Court able to find any authority, supporting the proposition that a plea agreement requiring the State to recommend probation for an indefinite term remains binding at a retained jurisdiction hearing. Additionally, there is nothing in the plea agreement indicating that Longest or the State contemplated the State's obligations under the agreement would carry over to the subsequent retained jurisdiction hearing.

A plea agreement is similar to a contract and is often analyzed according to contract principles. *Dunlap v. State*, 141 Idaho 50, 63, 106 P.3d 376, 389 (2004); *see also Puckett*, 129 S. Ct. at 1430 ("Although the analogy may not hold in all respects, plea bargains are essentially contracts."). As with other types of contracts, when determining the parties' responsibilities under an ambiguous plea agreement, the main focus is on the intent of the parties. *Dunlap*, 141 Idaho at 63, 106 P.3d at 389. Thus, when determining whether a plea agreement lacking a durational term should be given effect beyond the initial sentencing hearing, this Court must ascertain whether the plea agreement was intended to have such continuing effect. For example, in *State v. Lampien*, we analyzed whether the State's promise to recommend a particular sentence carried over to a Rule 35 motion for a reduction of sentence. 148 Idaho 367, 377−78, 223 P.3d 750, 760−61 (2009). In that case, the defendant entered into a written plea agreement with the State, which stated that the "State and Defendant agree to be bound to the following sentence . . . ." *Id*. at 378, 223 P.3d at 761. We held that the "broad language" of the plea agreement represented "an unqualified commitment by the State to adhere to the sentencing recommendation" at the Rule 35 hearing. *Id.* In other words, based on the language of the plea agreement, there was ground for the defendant to reasonably expect the State's obligation would carry over to the Rule 35 hearing.

On the other hand, other courts have held that the government is free to oppose a defendant's Rule 35 motion where the plea agreement does not specifically indicate whether the

government is to be bound to the initial sentencing recommendation in subsequent proceedings. For example, in *United States v. Mooney*, the defendant entered into a plea agreement with the government whereby the government promised "to recommend that the defendant be sentenced to ten years imprisonment." 654 F.2d 482, 484 (7th Cir. 1981). At the sentencing hearing, the government followed the plea agreement and recommended a sentence of ten years imprisonment, but the trial court ultimately sentenced the defendant to a maximum of twenty-five years imprisonment. *Id*. The defendant then filed a Rule 35 motion for reduction of sentence, which the government opposed. *Id*. at 485. The court held that the government did not violate the terms of the plea agreement by opposing the Rule 35 motion because the express terms of the agreement did not indicate a promise not to oppose the Rule 35 motion nor was there any additional evidence demonstrating the parties contemplated the continuing effect of the agreement. *Id*. at 486. The court specifically noted that given the lack of evidence that the parties intended the plea agreement to be given effect in the context of a Rule 35 motion, it was hesitant to imply such a term in the agreement. *Id*.

It is important to note that in each case discussed above, the focus of the inquiry was whether the language of the plea agreement gave the defendant the reasonable expectation that the benefits of the State's promise would be available throughout the relevant sentencing proceedings. *See State v. Lankford*, 127 Idaho 608, 614–15, 903 P.2d 1305, 1311–12 (1995). The cases only disagree about whether, in the individual case, the post-sentencing proceeding was contemplated by the parties during plea negotiations.

In this case, there is nothing in the language of the plea agreement, as recited by defense counsel at the sentencing hearing, indicating the parties intended the plea agreement to remain in effect after the initial sentencing. Unlike in *Lampien*, there is no term in the plea agreement that would indicate an "unqualified commitment" by the State to be bound by the agreed-upon recommendation in subsequent post-sentencing proceedings. In *Lampien*, the parties, in a written agreement, specifically agreed that the State would be "bound" to a particular sentence. The unusual language used in the plea agreement denotes an understanding by the parties that the plea agreement would have continuing effect. However, in this case, like in *Mooney*, the State simply agreed to "recommend" the agreed-upon sentence, and in both cases, the State followed through with the agreement and recommended the agreed-upon sentence at the sentencing hearing. Just as there was nothing in the plea agreement in *Mooney* to indicate the State's

obligation continued beyond that recommendation, there is no language in the plea agreement between Longest and the State that would indicate the State's obligation carried over to the retained jurisdiction hearing.

Furthermore, there is no evidence indicating the parties contemplated the continuing effect of the plea agreement in a post-sentencing proceeding. Longest has not produced any evidence demonstrating that the parties contemplated the State's obligation to recommend probation would continue through the retained jurisdiction hearing nor did either party express such an understanding when the terms of the agreement were orally recited before the district court. In fact, the terms of the parties' plea agreement clearly indicate both parties intended for Longest to be placed on probation. There is no evidence either party contemplated the possibility that the district court would retain jurisdiction.[1] Thus, we cannot say the parties intended for the State to be bound at the retained jurisdiction hearing because neither party expected such a hearing to take place. A contemporaneous objection to the State's alleged breach of the plea agreement at the retained jurisdiction hearing would have given the district court the ability to determine the relevant facts concerning the parties' agreement and an opportunity to reach a conclusion concerning whether the agreement was limited to the sentencing hearing. Without the contemporaneous objection, we are left with the terms of the plea agreement, which simply indicate an intention that Longest be placed on probation. In the absence of any indication that the parties expected the State to be bound to the terms of the plea agreement beyond the initial sentencing hearing, we will not imply such a condition into the agreement.

Another distinction between this case and *Lampien* deserves mention. *Lampien* was simply a plea for leniency under Rule 35 based upon the record developed at the sentencing hearing. However, in this case additional evidence was before the court at the retained jurisdiction hearing, particularly Longest's rider report that the judge characterized as "one of the worst" he had seen. Just as the State could not have foreseen that the court would grant a period of retained jurisdiction necessitating the post-sentencing hearing, neither could the State have foreseen that Longest would behave badly during his rider. The State likely based its agreement to recommend probation on the expectation that Longest would behave in an appropriate fashion.

---

[1] Given the fact that the district court declined to follow the parties' sentencing recommendation in the first place, it is highly unlikely in light of Longest's poor rider performance that the district court would have been inclined to do so following the period of retained jurisdiction. Even if the State had specifically agreed to doggedly support its initial sentencing recommendation throughout Longest's journey through the criminal justice system, it is improbable that the outcome for Longest would have been any different.

Even if the State had undertaken a continuing obligation to stick with its recommendation, Longest's failure to behave may well have furnished a ground for relief from that obligation.

Longest has failed to shoulder his burden of demonstrating clear or obvious error pursuant to the second prong of the fundamental error analysis and, therefore, it is unnecessary for us to further discuss the other two prongs.

**IV.**
**Conclusion**

Because Longest has not demonstrated that the alleged error meets a necessary requirement for fundamental error analysis, we decline to review it for the first time on appeal. The judgment of the district court is affirmed.

Chief Justice EISMANN, and Justices BURDICK, W. JONES, and HORTON CONCUR.