UNITED STATES of America,
Plaintiff-Appellee,

v.

George M. VERRUSIO,
Defendant-Appellant.

No. 85–1690.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 13, 1985.

Decided Oct. 9, 1986.

As Amended Oct. 23, 1986.

---

Richard Kammen, McClure, McClure & Dammen, Indianapolis, Ind., for defendant-appellant.

Robert Perry, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before CUMMINGS and CUDAHY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

The primary issue presented in this appeal is whether the district court properly denied the defendant's motion to dismiss three counts of an indictment on the ground that those charges violated a prior plea agreement. For the reasons stated below, we will reverse the ruling on the motion to dismiss and remand for further proceedings.

I

In December 1977 George Michael Verrusio was arrested for possession of cocaine at Indianapolis International Airport by Drug Enforcement Administration ("DEA") agents. The details of that arrest are set forth in our opinion addressing Verrusio's motion to suppress evidence. *United States v. Verrusio*, 742 F.2d 1077 (7th Cir.1984).

In June 1979 Verrusio was indicted on charges arising from his 1977 arrest and from additional drug offenses that he allegedly committed in December 1978. The indictment charged him with one felony violation of 21 U.S.C. § 841(a)(1), which prohibits possession of a controlled substance with intent to distribute, and eight misdemeanor violations of 21 U.S.C. § 844(a), which prohibits possession of a controlled substance.

Verrusio and the government subsequently entered into a plea agreement.[1]

---

1. The record does not include a written plea agreement, but instead includes a stipulation as to how Kenneth Foster, the Assistant United States Attorney who entered into the plea agreement on behalf of the government, would testify if he were called as a witness at the hearing on the motion to dismiss. The stipulation states that if Foster were called to testify, he would state that the government and the defendant entered into the plea bargain "[t]hat the Defend-ant would plead guilty to Count 6 of the indictment bearing cause number IP79–44–CR ... [and] [t]hat the Counts 1, 2, 3, 4, 5, 7, 8 and 9 of the indictment bearing cause number IP79–44–CR would be dismissed." The stipulation also states that, if called as a witness, Foster would testify that:

> During negotiations leading up to the plea bargain, facts were disclosed which indicated

Verrusio pled guilty to the misdemeanor charged in Count 6 of the indictment in exchange for dismissal of the remaining eight counts. He also was to testify before a grand jury and, if necessary, at the trials of his co-conspirators, with regard to his knowledge of and involvement in a conspiracy with certain individuals, including one Fred McCord, to transport cocaine. The government agreed that, in return for such testimony, it would not file additional charges against Verrusio based upon his part in the same alleged conspiracy.

Verrusio appeared before a grand jury in January 1980. He testified that his involvement in the conspiracy consisted only of transporting packages of cocaine from Florida to Indianapolis on four occasions in 1977 for one Fred McCord. In February 1980 Verrusio was sentenced on Count 6 of the indictment to thirty days of work release and one year of probation. He has served that sentence.

The government came to believe that Verrusio had not been truthful in his statements to law enforcement officials and in his grand jury testimony. As a result, Verrusio was indicted again in 1982 on four charges. Counts 1, 2, and 3 of the 1982 indictment related to his 1977 arrest; the government previously had dismissed similar charges pursuant to the plea agreement. Count 4 charged that Verrusio perjured himself in his grand jury testimony.

Verrusio moved to dismiss Counts 1, 2, and 3 of the indictment. A hearing was held on the motion to dismiss in November 1982. The only witness to testify was DEA agent Thomas Casey. Casey stated that Verrusio's grand jury testimony that he was merely a courier for McCord was directly contradicted by the statements of and testimony before another grand jury of McCord, Thomas Smith, Michael Cockman, and William Graham. After taking Verrusio's motion under advisement, the district court denied the motion to dismiss. The district court subsequently dismissed without prejudice under the Speedy Trial Act count 4 charging perjury. The government never refiled that count and the statute of limitations has run with respect to the perjury charge. Pursuant to Fed.R.Crim.P. 11(a)(2), which authorizes conditional pleas of guilty, Verrusio entered a conditional guilty plea to Count 1 of the 1982 indictment. He was sentenced to 15–months imprisonment and is on bond pending this appeal from the denial of his motion to dismiss.

## II

### A. *Pre-Indictment Proceedings*

■ A plea agreement is a contract. *See, e.g., United States v. Fields,* 766 F.2d

---

to the Government that Defendant Verrusio was in some manner involved in a conspiracy with Fred McCord, Thomas Smith and others to transport cocaine. It was agreed as a part of the negotiations and plea bargain that any charges not charged in the indictment, but known to the Government such as a possible conspiracy charge would not be filed. It also was contemplated that no additional charges, the substance of which was unknown to the Government but occurring as part of the same alleged conspiracy and within the relevant time period would not [sic] be filed.

The terms and conditions of the plea bargain contemplated that the Defendant would appear and testify before the United States Grand Jury for the Southern District of Indiana. It was further contemplated that Defendant Verrusio would give statements to various law enforcement agencies and it was contemplated that those statements would be truthful.

Moreover, the district court did not make findings of fact as to the terms of the plea agreement.

In this case, the parties do not dispute that one term of the plea agreement was that the defendant "was to testify before the United States Grand Jury for the Southern District of Indiana and give statements, when requested, to agents of the United State's Attorney's office and the Drug Enforcement Administration." Appellants Brief 3; *see also* Appellee's Brief 3. In other cases, however, the parties might disagree as to the terms of the plea agreement. For this reason, we remind the government and the bar that this court has held that plea "agreements should be reduced to writing." *United States v. De Michael,* 692 F.2d 1059, 1062 (7th Cir.1982), *cert. denied,* 461 U.S. 907, 103 S.Ct. 1878, 76 L.Ed.2d 809 (1983); *cf. United States v. Delegal,* 678 F.2d 47, 50 (7th Cir.1982) (rejection of plea agreement because its terms were reflected in court transcript, rather than written instrument, was in error).

1161, 1168 (7th Cir.1985); *United States v. Strawser*, 739 F.2d 1226, 1230 (7th Cir.), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 518, 83 L.Ed.2d 407 (1984). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). Conversely, "a defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement." *United States v. Calabrese*, 645 F.2d 1379, 1390 (10th Cir.), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3008, 69 L.Ed.2d 390 & 454 U.S. 831, 102 S.Ct. 127, 70 L.Ed.2d 108 (1982); *see also United States v. Wood*, 780 F.2d 929, 932 (11th Cir.1986) (breach of immunity agreement); *United States v. Stirling*, 571 F.2d 708, 731–32 (2d Cir.1978) (plea bargain); *United States v. McCarthy*, 445 F.2d 587, 591 (7th Cir.1971) (Stevens, J.) (plea bargain).

■ Both parties agree that due process prevents the government from determining unilaterally that the defendant breached the plea agreement. *See Calabrese*, 645 F.2d at 1390; *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir.1976). In this case, the determination that Verrusio breached the plea agreement was not made by the government alone, but by the district court after an evidentiary hearing. The pre-trial hearing conducted by the district court thus afforded Verrusio an opportunity to be heard. Verrusio maintains, however, that the government, as a matter of due process, must obtain a judicial determination that he breached the plea agree-

ment before it can reindict him on charges that were dismissed or not brought pursuant to the plea agreement. We disagree.

Our analysis begins by ascertaining whether Verrusio possesses an interest that is protected by due process. Whether his interest is more properly characterized as a property or a liberty interest, *cf. Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir.1986) (characterization of interest inconsequential to disposition of claim), the requirements of due process apply to Verrusio's interest in enforcement of the plea agreement. *See Santabello*, 404 U.S. at 262, 92 S.Ct. at 498–99 (holding that a defendant has a constitutional right to enforcement of a plea bargain). Therefore, if the second indictment constituted a deprivation of his interest in enforcement of the plea agreement, then, absent exigent circumstances,[2] Verrusio would be entitled to a preindictment hearing to determine whether he breached his obligations under the plea agreement. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (pre-deprivation hearing is "root requirement" of due process).

We, however, conclude that the second indictment did not deprive Verrusio of his interest in enforcement of the plea agreement because that indictment alone did not deny him the benefit of his bargain. As the Supreme Court has observed, "[p]lea bargaining flows from 'the mutuality of advantage' to defendants and prosecutors, each with his own reasons for wanting to avoid trial." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). The "advantages of pleading guilty and limiting the probable penalty are

---

2. Due process does not require a pre-deprivation hearing in an emergency, that is, when the costs to society of delay sufficiently outweigh the benefit to the individual of an earlier opportunity to be heard. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 542, 105 S.Ct. 1487, 1493 n. 7, 84 L.Ed.2d 494 (1985); *Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of misbranded medicine); *North American Cold Storage Co. v. Chicago*, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (destruction of unwholesome

food). Thus, even if reindictment deprived a defendant of his interest in enforcement of a plea agreement, there might be exigent circumstances that would excuse the requirement of a pre-indictment hearing. For example, disclosure of the government's interest in reindicting the defendant might lead to the rapid disappearance of the defendant or of a key witness. In this case, however, the government did not allege that exigent circumstances required a post-, rather than pre-indictment hearing.

obvious" to a defendant who perceives that acquittal is unlikely. *Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 1471, 25 L.Ed.2d 747 (1970). The reason that a defendant enters into a plea agreement is because it is in the defendant's self-interest "to acknowledge his guilt of the lesser charge rather than risk conviction on the more serious" offenses. *Scott v. United States*, 419 F.2d 264, 276 (D.C. Cir.1969) (Bazelon, J.).

In this case, at the time he entered into the plea bargain, Verrusio faced the possibility that he would be convicted of possessing, with intent to distribute, a controlled substance, a felony under 21 U.S.C. § 841(a)(1), and could be imprisoned for up to 40 years and fined up to $500,000. He decided that it was in his self-interest to plead guilty to simple possession of a controlled substance, a misdemeanor under 21 U.S.C. § 844. The advantage for which he bargained was that he would not run the *risk of conviction* on charges arising out of his participation in the conspiracy to transport cocaine. That benefit was conditioned upon his truthful testimony before the grand jury. Verrusio thus would be deprived of the benefit of his bargain only if he was *tried* pursuant to the second indictment without a prior judicial finding that he did not testify truthfully before the grand jury. The second indictment standing alone did not constitute a deprivation of Verrusio's interest in enforcement of the plea agreement because it did not subject him to the risk of conviction without a prior judicial determination that he breached the plea bargain.

Our research has disclosed no case which squarely decides the issue of when a judicial determination that a defendant has breached a plea agreement is to be made. The actual procedures followed, insofar as they are reflected in reported cases, vary. *Compare Strawser*, 739 F.2d at 1228 (after indictment had issued, defendant filed motion to quash, claiming indictment violated plea agreement) *with Wood*, 780 F.2d at 930 (government informed defendant that it thought he had violated agreement and met with him in attempt to resolve the issue before indictment; evidentiary hearing held after indictment, apparently on defendant's motion to dismiss) *and Calabrese*, 645 F.2d at 1389 (government notified defendant and Court by letter that it intended to prosecute due to defendant's failure to comply with agreement; defendant did not object until motion to vacate sentence, following trial and conviction).

Because no contention that a hearing should have been held prior to indictment was raised in those cases, the question is still an open one. Still, the cases seem to indicate that a post-indictment motion is, under some circumstances, an acceptable procedural mechanism for obtaining judicial determination of the parties' obligations under a plea agreement. It would of course be preferable for the government to notify a defendant that it intends to reindict because he has breached the plea agreement, as was done in *Wood*. Perhaps an even better procedure would be a motion by the government for relief from its obligations under the plea agreement, before it proceeds to the indictment stage. We merely hold that, under the circumstances of this case, an evidentiary hearing on Verrusio's motion to dismiss is sufficient to satisfy the demands of due process.[3]

---

**3.** We note in this regard that we are particularly handicapped, as was the district judge, by the absence of a written plea agreement. *See* note 1, *supra*. Because a defendant has a constitutional interest in enforcement of a plea agreement, *Santobello*, 404 U.S. at 262, 92 S.Ct. at 498–99, the presence of a written agreement which provided for a pre-indictment hearing might alter the analysis. However, such a case is not presented here, and we do not purport to decide it. The agreement in this case simply sets forth the parties' respective obligations; it does not require the government to follow a particular procedure in the event that it believes Verrusio breached his obligations. As the Supreme Court has instructed the lower courts, a party's rights under a plea agreement are limited by "what the parties in fact agree to." *United States v. Benchimol*, 471 U.S. 453, 105 S.Ct. 2103, 2105, 85 L.Ed.2d 462 (1985) (per curiam). A potential defendant is not ordinarily entitled to a hearing prior to indictment. *See United States v. Gardner*, 516 F.2d 334, 339 (7th Cir.), *cert.*

■ Verrusio also contends that due process requires that the government convict him of perjury before it can indict him on charges that were the subject of the prior plea agreement. We disagree for two reasons. First, as developed above, due process does not require a judicial determination that the defendant breached a plea agreement before the defendant is indicted on charges that were dismissed or not brought pursuant to the plea agreement. Second, due process does not require that the finding that the defendant breached the plea agreement be established beyond a reasonable doubt.

As Justice Harlan once wrote,

The trier of fact will sometimes, despite his best efforts, be wrong in his factual conclusions. In a lawsuit between two parties, a factual error can make a difference in one of two ways. First, it can result in a judgment in favor of the plaintiff when the true facts warrant a judgment for the defendant.... On the other hand, an erroneous factual determination can result in a judgment for the defendant when the true facts justify a judgment in plaintiff's favor....

The standard of proof influences the relative frequency of these two types of erroneous outcomes. ... Because the standard of proof affects the comparative frequency of these two types of erroneous outcomes, the choice of the standard to be applied in a particular kind of litigation should, in a rational world, reflect an assessment of the comparative social disutility of each.

*In re Winship*, 397 U.S. 358, 370–71, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring); *see also Addington v. Texas*, 441 U.S. 418, 425–33, 99 S.Ct. 1804, 1808–13, 60 L.Ed.2d 323 (1979) (analyzing standards of persuasion in terms of costs of errors to individual and to society and holding that due process requires that civil commitment be proven by clear and convincing evidence). Thus, in criminal cases the government must prove the defendant's guilt beyond a reasonable doubt because our society has determined that "it is far worse to convict an innocent man than to let a guilty man go free." *In re Winship*, 397 U.S. at 372, 90 S.Ct. at 1077 (Harlan, J., concurring). Conversely, in civil cases the plaintiff must prove his case by only a preponderance of the evidence because "we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor." *Id.* at 371, 90 S.Ct. at 1076.

In determining the proper standard of persuasion by which the government must establish that the defendant breached the plea agreement, we must weigh the costs of two errors—the cost of incorrectly finding that he breached the plea bargain, which we will call the cost of a false positive, and that of incorrectly finding that the defendant did not breach the plea agreement, that is, the cost of a false negative. In this case, a false positive would mean that a defendant who performed his obligation under a plea agreement to testify truthfully before a grand jury would be tried on charges that were dismissed or not filed pursuant to the plea agreement. A false negative error would mean that a defendant who perjured himself in his grand jury testimony in violation of the plea agreement would be protected from prosecution on charges that were dismissed or not filed as a result of the plea bargain.

We do not believe that the comparison between these two costs is equivalent to that between the costs of convicting an

*denied,* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89 (1975). Thus, we will not "imply as a matter of law a term which the parties themselves did not agree upon." *Benchimol,* 105 S.Ct. at 2105; *see also United States v. Mooney,* 654 F.2d 482, 486 (7th Cir.1981).

We further note that a number of plea agreements that have appeared before this court expressly provide a particular procedure that the government must follow if it seeks to reindict the defendant. For example, one such agreement calls for the government to offer the defendant an opportunity to correct any breach on his part before the government can reindict him. It thus would appear that the parties might contract for a pre-indictment hearing in the event the government claims the plea agreement has been breached.

innocent defendant and acquitting a guilty defendant. Although substantial, the cost of denying a defendant the benefit of the plea bargain to which he is entitled does not approach the much graver costs to the individual and to society of convicting an innocent person. A defendant who is incorrectly deprived of the benefit of his plea bargain must bear the burden of defending himself at trial, but does not suffer the unwarranted stigma and punishment imposed by an incorrect conviction. Moreover, an incorrect finding that a defendant breached a plea agreement does not create a risk that an innocent person will be convicted. Even if it prevails on the defendant's motion to dismiss Counts 1, 2, and 3 of the indictment, the government at trial still must establish beyond a reasonable doubt that the defendant committed the charged offenses. Thus, an erroneous determination that a defendant violated a plea agreement would not expose the defendant to the risk of conviction without the shield that the defendant's guilt must be proven beyond a reasonable doubt.

The government has been required to establish its case beyond a reasonable doubt only when there is a risk that an erroneous finding might cause an innocent person to be convicted. *See Addington,* 441 U.S. at 428, 99 S.Ct. at 1810; *Patterson v. New York,* 432 U.S. 197, 208, 97 S.Ct. 2319, 2326, 53 L.Ed.2d 281 (1977). Since the government's burden of persuasion at trial already guards against the risk of convicting an innocent person, we decline to require that the government establish that the defendant breached the plea bargain by evidence beyond a reasonable doubt.[4] We therefore hold that the government need not convict Verrusio of perjury before it reindicts him on charges that were dismissed or not brought pursuant to

a plea agreement on the ground that the defendant breached his obligation under a plea agreement to testify truthfully before a grand jury.[5]

### B. *Post-Indictment Hearing*

Verrusio further argues that the post-indictment hearing conducted in this case violated due process on the grounds that (1) the district court improperly placed the burden of persuasion upon him rather than upon the government, and (2) the government's evidence that Verrusio had breached the plea agreement consisted exclusively of hearsay.

### 1. *Allocation of the Burden of Persuasion*

As Verrusio argues on appeal, the government bears the burden of persuasion to establish that Verrusio breached the plea agreement. The government seeks to be relieved of its obligations under the plea agreement on the ground that Verrusio did not perform his side of the bargain. As does any party that seeks to be relieved of its contractual obligations by virtue of the other party's breach of the contract, *see, e.g.,* A. Corbin, *Corbin on Contracts* §§ 1228, 1230 (1964), "the government has the burden of establishing a breach by the defendant if the agreement is to be considered unenforceable." *See Calabrese,* 645 F.2d at 1390.

The government does not dispute that it bears the burden of persuasion.[6] It concedes, moreover, that the district court assigned the burden of persuasion to Verrusio. Appellee's Brief 13; *see also* Transcript of Hearing on Motion to Dismiss ("Tr.") 46. It argues, however, that Verrusio did not object to the allocation of the burden of persuasion.

---

**4.** Were we to require a standard of persuasion of beyond a reasonable doubt, the difficulty of proving that the defendant violated the plea agreement might deter the government from entering into plea bargains that benefit both parties.

**5.** *See infra* section II(C).

**6.** The government states only that "it must be established by a preponderance of the evidence that the defendant has, in fact, breached the agreement," Appellee's Brief 12; however, the cases cited by the government for this proposition hold that the prosecution bears the burden of persuasion to prove the defendant's breach.

The government correctly states that Verrusio did not object to bearing the burden of persuasion. *See* Tr. 46–47. We therefore must consider whether an incorrect allocation of the burden of persuasion constitutes plain error on the facts of this case. In doing so, we must be mindful that "the plain error exception to the contemporaneous objection rule is to be 'used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.' " *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1047, 84 L.Ed.2d 1 (1985) (quoting *United States v. Frady*, 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982)).[7]

▋ The government maintains that any error is not plain error for the reason that the allocation of the burden of persuasion is immaterial in cases in which the standard of persuasion is a preponderance of the evidence. Appellee's Brief 13–14. Having reviewed the record as a whole, *see Young*, 470 U.S. at 15, 105 S.Ct. at 1047, we disagree, given the facts of this case. In its essence, the hearing in this case was a swearing contest. Verrusio testified before a grand jury that he merely transported packages of cocaine from Florida to Indianapolis for Fred McCord. DEA agent Casey testified at the hearing on the motion to dismiss that McCord's and Thomas Smith's statements to him and their grand-jury testimony directly contradicted Verrusio's assertion that he was merely a courier.[8] The district court was called upon to decide who was telling the truth and who was not.

In its order denying Verrusio's motion to dismiss, the district court did not find that Verrusio's testimony was not worthy of belief or that McCord's and Smith's testimony as recounted by Casey was more credible. We therefore cannot ascertain whether the district court found that Verrusio's testimony was less credible than Casey's description of McCord's and Smith's testimony, or that the testimony of Verrusio and of McCord and Smith was equally worthy (or equally undeserving) of belief.[9] Thus, it is entirely possible that the district court denied Verrusio's motion to dismiss simply because Verrusio was incorrectly assigned the risk of equipoise. Because the incorrect allocation of the burden of persuasion could well have caused a miscarriage of justice, we conclude that this error constitutes plain error.[10]

---

7. The Supreme Court recently has made clear that harmless-error analysis applies to a jury instruction that improperly allocated the burden of persuasion with respect to the issue of intent. *See Rose v. Clark*, ⸺ U.S. ⸺, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). That decision does not alter our plain-error analysis. Since the plain-error standard is higher than the harmful-error standard (that is, it is more difficult to establish that an error to which no contemporaneous objection has been made requires reversal than it is to demonstrate that the same error to which an objection has been made mandates reversal), *see United States v. Lewis*, 797 F.2d 358, 369–70 (7th Cir.1986) (applying harmless-error and plain-error standards), an error that is plain error is *ipso facto* harmful. Thus, the concept of harmless plain error does not exist. *See Young*, 470 U.S. at 16, 105 S.Ct. at 1047 n. 14.

8. Casey also recounted the testimony of Michael Cockman and William Graham. Casey testified that Cockman "stated that he had seen Mr. Verrusio in Florida on occasions and he *assumed* —though he did not recall having any transactions with him himself—that he knew that he was a customer of Mr. McCord's." Tr. 35 (emphasis added). Casey also stated that Graham

"testified that he had met Mr. Verrusio in Florida, that Mr. Verrusio had provided him with some money at a motel in Florida, and I believe Mr. Graham stated that the money came from— the money provided to him from Mr. Verrusio came from Mr. McCord." Tr. 35–36. Given its equivocal nature, Casey's description of Cockman's testimony does not contradict Verrusio's grand jury testimony. Moreover, Casey's account of Graham's testimony would seem to be consistent with Verrusio's grand jury testimony that he was merely a courier for McCord.

9. The district court was unable to observe the declarants' demeanor because neither Verrusio, nor McCord or Smith testified at the motion to dismiss. Hence, it is quite possible that the district court did not find that McCord and Smith were more credible than Verrusio.

10. The government also argues that the misallocation of the burden of persuasion is not plain error because it assumed the burden of coming forward with evidence. We disagree. The burden of coming forward with evidence, which means the liability to an adverse ruling if evidence on an issue has not been produced, is

## 2. *Admission of Hearsay Testimony*

Verrusio also argues that the district court admitted inadmissible hearsay evidence. We agree. That Casey's account of the statements and grand-jury testimony of McCord, Smith, Cockman, and Graham is hearsay is uncontradicted. The government argues only that "most of the hearsay testimony of Agent Casey was admitted without objection by defense counsel." Appellee's Brief 14. We disagree.

It is true that some hearsay was admitted without objection. The government initially asked Casey "when was the first time that you learned of any involvement of George Michael Verrusio in a conspiracy charged in Count 1 of the indictment?" Tr. 15. Verrusio objected on the ground of hearsay to Casey's testimony that relied upon other parties' statements. *Id.* The district court correctly overruled the objection to this particular question on the ground that statements concerning the dates that Casey acquired his knowledge were not hearsay. Tr. 15–16. Verrusio did not seek a continuing hearsay objection to this line of questioning. Shortly thereafter, the government asked Casey whether "[a]t that time, that being subsequent to their [McCord's and other individuals'] interviews by you and the testimony that they gave before the grand jury, did you learn matters and facts about George Michael Verrusio which were not disclosed in ... his own grand jury testimony of January 8th, 1980?" Tr. 17. Casey answered that "[t]here is a direct contradiction in what Mr. Verrusio testified to on January 8th, 1980 and what I learned after July 1981." Tr. 18. Verrusio did not interpose a hearsay objection to this or to several similar exchanges. *See* Tr. 17–19.

Nevertheless, Verrusio did object to the admission of crucial hearsay evidence. For example, the government asked Casey whether "what ... [Thomas Smith] has stated to be the facts concerning a trip to Florida on or about December 18th, 1977 [is] in complete contradiction of what is contained in the grand jury testimony of George Michael Verrusio under oath before the grand jury for the Southern District of Indiana on January the 8th, 1980?" Tr. 20–21. Defense counsel immediately stated that "I will have to object on the grounds it is clearly hearsay." Tr. 21. The government represented that "the Heldt case out of the D.C. Court of Appeals, involving subject matter identical to this proceedings here" supported the admission of such testimony.[11] The district court, "[o]n the strength of that Heldt case," overruled the objection. Tr. 22. Casey then answered that "Yes, ... the information that I have received is in direct contradiction to what Mr. Verrusio testified to on January 8th, 1980." Tr. 22. On appeal the government does not dispute that such testimony is plainly inadmissible hearsay.

■ The government does not contend, and, given the context of this case, we could not find, that the improper admission of such inadmissible hearsay is harmless error. We exclude as hearsay out-of-court statements offered to prove the truth of the matter asserted because, *inter alia,* the use of such second-hand testimony deprives the trier-of-fact of an opportunity to observe the declarant's demeanor and to judge his credibility and denies the oppos-

distinct from the burden of persuasion, which is the risk of nonpersuasion and of equipoise. C. McCormick, *McCormick on Evidence* § 336 (2d ed. 1972). That the government was the first to produce evidence does not suggest that it in any way assumed the burden of persuasion. Indeed, the district court expressly noted that Verrusio still bore the burden of persuasion, notwithstanding that the government assumed the burden of producing evidence. Tr. 46.

11. The case to which the government refers is presumably *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982), in which the District of Columbia Circuit held that the terms of the plea agreement involved in that case did not prevent the government from reindicting the defendant on conspiracy charges. The opinion did not address the admissibility of hearsay evidence such as Casey's description of Smith's statements, and the government does not cite the decision in its appellate briefs.

ing party its right to cross-examine the declarant. *See United States v. Norwood*, 798 F.2d 1094, 1097–98 n. 4 (7th Cir.1986). In this case, the determination as to whether Verrusio breached the plea agreement depends entirely upon the district court's assessment of the credibility of Verrusio and of McCord and other persons. The use of such hearsay evidence deprived the district court of an opportunity to assess the demeanor and credibility of the declarants—the government's actual source of information. Moreover, it barred Verrusio from challenging his accusers in the crucible of cross-examination. The government's failure to call McCord as a witness [12] prevented Verrusio from questioning him on such subjects as his possible motive to lie, his criminal record,[13] and any inconsistencies between his testimony on direct examination and that before the grand jury.[14] Therefore, although Verrusio failed to preserve an objection to the entirety of Casey's hearsay testimony, the erroneous admission of hearsay evidence over Verrusio's objection requires us to remand this case to the district court.[15]

## C. *Procedure on Remand*

In light of our disposition of this case, we must decide an issue that the parties raised on appeal and that the district court must address on remand, namely, the proper standard of persuasion that the government must satisfy to establish that Verrusio breached the plea bargain. We have rejected Verrusio's argument that the government must prove beyond a reasonable doubt that a defendant violated the plea agreement, *see supra* section II(A), but we still must determine whether the government must demonstrate the defend-

ant's breach by a preponderance of the evidence, as the government urges, or by clear and convincing evidence.

This question appears to be one of first impression before the federal courts. The Tenth Circuit has held that a judicial determination of a defendant's breach of a plea agreement must be "based on adequate evidence," but it did not explain what it considered to be adequate evidence. *Calabrese*, 645 F.2d at 1390. The courts of five states have decided the issue—four have adopted a preponderance standard, *see State v. Warren*, 124 Ariz. 396, 604 P.2d 660 (Ariz.Ct.App.1979); *Ellison v. State*, 56 Md.App. 567, 468 A.2d 413 (1983); *State v. Curry*, 49 Ohio App.2d 180, 359 N.E.2d 1379 (1976); *In re James*, 96 Wash.2d 847, 640 P.2d 18 (1982) (en banc) (per curiam), but one has required clear and convincing evidence of breach, *see State v. Bangert*, 131 Wis.2d 246, 389 N.W.2d 12 (1986). However, the courts that have resolved this issue have done so without extended discussion.

We conclude that when the government seeks to reindict a defendant on the ground that the defendant did not fulfill his obligations under a plea agreement, it must prove that the defendant breached the plea bargain by a preponderance of the evidence. We are mindful that a determination that a defendant breached a plea agreement is final in the sense that it will not later be submitted to the jury; however, we note that the standard of persuasion by which the government must establish several similar pre-trial matters in criminal cases is a preponderance of the evidence. *See, e.g., Nix v. Williams*, 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 2509 n. 5,

---

**12.** The record indicates that McCord was in federal custody when he testified before a grand jury in July 1981.

**13.** Verrusio alleges in his appellate briefs that McCord has been convicted on two occasions of drug offenses, and has been charged and may have been convicted of fourteen counts of armed robbery in California. No evidence of McCord's possible criminal record was brought before the district court.

**14.** The grand jury testimony of McCord, as well as that of Smith, Cockman, and Graham, was not provided to Verrusio, and is not a part of the record on appeal.

**15.** Because the misallocation of the burden of persuasion and the erroneous admission of hearsay testimony require us to remand this case to the district court, we find it unnecessary to consider Verrusio's remaining contentions.

81 L.Ed.2d 377 (1984) (whether evidence obtained from *Miranda* violation would have been derived from an independent source); *United States v. Matlock,* 415 U.S. 164, 177 & n. 14, 94 S.Ct. 988, 996 & n. 14, 39 L.Ed.2d 242 (1974) (whether search violated the Fourth Amendment) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence."); *Lego v. Twomey,* 404 U.S. 477, 485–87, 92 S.Ct. 619, 624–25, 30 L.Ed.2d 618 (1972) (whether confession was voluntary).[16] The costs to society and to a defendant of the admission of unconstitutionally seized evidence or an involuntary confession surely are as great, if not greater, than the costs of incorrectly depriving a defendant of the benefits of his plea bargain. The Supreme Court's holding that the constitutionality of a search and the voluntariness of a confession must be proven by a preponderance of the evidence persuades us that the government may establish a defendant's breach of a plea bargain by a preponderance of the evidence.

Moreover, a defendant's interest in enforcement of a plea agreement resembles his privilege against double jeopardy. Double jeopardy protects a defendant who has been acquitted or convicted of an offense from twice running the risk of conviction for the same offense; by entering into the plea agreement, Verrusio acquired similar protection against the risk of conviction on offenses arising out of the participation in the conspiracy to transport cocaine. The majority of the courts of appeals that have addressed the question have held that the government bears the burden to establish by a preponderance of the evidence that a second indictment does not violate double jeopardy. *See, e.g., United States v. Loyd,* 743 F.2d 1555, 1563 (11th Cir.1984); *United States v. Kalish,* 690 F.2d 1144, 1147 (5th Cir.1982), *cert. denied,* 459 U.S. 1108, 103 S.Ct. 735, 74 L.Ed.2d 958 (1983); *United States v. Booth,* 673 F.2d 27, 30–31 (1st Cir.), *cert. denied,* 456 U.S. 978, 102 S.Ct. 2245, 72 L.Ed.2d 853 (1982); *United States v. Jabara,* 644 F.2d 574, 576–77 (6th Cir.1984); *United States v. Inmon,* 568 F.2d 326, 332–33 (3d Cir.1977) (the leading case on this question).[17] Given the close analogy between reindictment in violation of double jeopardy and reindictment in contravention of a plea agreement, we hold that the government must establish the defendant's breach of the plea agreement by a preponderance of evidence.

### III

For the reasons stated above, the denial of Verrusio's motion to dismiss Counts 1, 2, and 3 of the indictment is REVERSED. This matter is REMANDED to the district court for a further hearing on the motion to dismiss consistent with law and this opinion. Circuit Rule 18 shall not apply.

16. The standard of persuasion to establish an independent source for an in-court identification is clear and convincing evidence, *see United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); however, as the Supreme Court made clear in *Nix,* 467 U.S. at 444 n. 5, 104 S.Ct. at 2509 n. 5, the justification for the clear and convincing evidence standard adopted in *Wade* is that in-court identifications easily can be tainted by pre-trial identifications at suggestive lineups. Since there is a greater risk of a false positive than a false negative identification, the Court adopted a heightened standard of persuasion. In this case, there is no reason to believe that the risk of a false positive, *viz.,* an incorrect finding that a defendant breached a plea bargain, is greater than that of a false negative, namely, an incorrect finding that the defendant did not violate the plea agreement. Hence, the reason that the Court adopted a clear and convincing evidence standard in *Wade* does not apply in this case.

17. In *United States v. Castro,* 629 F.2d 456 (7th Cir.1980), we stated in dicta that the defendant, rather than the government, bears the burden to establish that the later indictment violates double jeopardy. That statement would seem to conflict with the majority rule that the defendant bears the burden of coming forward with evidence that demonstrates that the later indictment violates double jeopardy; however, once the defendant has satisfied this initial burden, the burdens of coming forward with evidence and of persuasion shift to the government to establish that double jeopardy is not violated. We find it unnecessary to reconsider in this case the statement that we made in *Castro.*