UNITED STATES of America, Plaintiff,

v.

Amin ATAYA, Defendant.

No. 87 CR 198.

United States District Court,
N.D. Illinois, E.D.

Nov. 4, 1987.

Patrick Foley, Asst. U.S. Atty., Chicago, Ill., for plaintiff.

Kenneth L. Cunniff, Faber & Cunniff, Ltd., Chicago, Ill., for defendant.

### MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This prosecution, which arises out of an alleged counterfeiting scheme run by Mus-

tafa Syammach and defendant Amin Ataya, is before the court on Ataya's motion to dismiss the indictment. For the reasons set out below, that motion is granted.

## FACTS [1]

On July 10, 1986, in a case before Judge Plunkett, Ataya and Syammach were charged with making, transferring, and conspiring to make and transfer counterfeit bills. *United States v. Ataya*, No. 86 CR 462 (N.D.Ill.1986) (*See* Govt. Ex. 1).[2] Ataya entered into a plea agreement with the government; Syammach attempted to do the same, but when Judge Plunkett refused to accept his guilty plea, his case proceeded to trial.

Ataya's plea agreement (Govt. Ex. 2) obligated him to cooperate with the government in the prosecution of Syammach. The relevant paragraphs of the agreement provide as follows:

11. The defendant [Ataya] agrees he will cooperate fully with the government in any investigation in which he is called upon to cooperate that is related to or results from the charges in this case. Defendant agrees to provide complete and truthful information to government investigators, including truthful testimony, if called upon to testify, before any federal grand jury and United States District Court proceeding.

12. Specifically, defendant agrees to testify on behalf of the government in the case of *United States v. Mustafa Syammach*, 86 CR 462, currently pending before Judge Paul E. Plunkett.

Judge Plunkett reviewed these provisions with Ataya and accepted the plea agreement on September 25, 1986. *See* Govt. Ex. 3.

At Syammach's trial, Ataya testified for three to four hours as the main witness. Two days later a jury found Syammach guilty of conspiracy but acquitted him of the substantive crimes. Govt. Ex. 4 and 4a.

Thereafter Ataya was sentenced by Judge Plunkett. Pursuant to the plea agreement, Ataya had pled guilty to Counts One and Three of the indictment in exchange for a voluntary dismissal on Count Two. He received one year in prison and agreed to leave the country at the end of that period. *See* Govt. Ex. 3A and 5.

Syammach, meanwhile, filed two motions for a new trial, alleging in the second that the government had failed to turn over notes covered by the Jencks Act, 18 U.S.C. § 3500. *See* Govt. Ex. 11 and 12. Judge Plunkett reviewed certain handwritten notes made by a Secret Service agent and determined that the government had withheld material that should have been turned over under the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Subsequently, Judge Plunkett granted Syammach's second motion for a new trial, and dismissed the indictment without prejudice. *See* Govt. Ex. 8.

Once the government learned that Syammach might have to be retried, Assistant United States Attorney Patrick J. Foley and Secret Service Special Agent Andrew Almblad contacted Ataya. At two meetings without the presence of his attorney,[3] Ataya first reiterated his trial testimony and then contradicted it. Eventually, he reaffirmed Syammach's guilt and indicated through counsel (who had been summoned) that he would not testify at a retrial. Ataya then was informed, both at the U.S. Attorney's Office and in proceedings before Judge Plunkett, that his refusal to testify at a retrial was considered a breach of the plea agreement. *See* Def. Ex. 1 at 105. Judge Plunkett recused himself, believing that he could not be impartial, and Ataya was named in a new indictment containing only the count which had been dismissed pursuant to his plea agreement.

---

1. For purposes of this motion, all factual allegations in the indictment are presumed true.

2. In the interests of convenience, all government's exhibits will be denoted "Govt. Ex.", and all defendant's exhibits "Def. Ex.".

3. This court is uneasy with the prosecutors' practice of meeting with the defendant when his attorney is not present, even if the attorney consents. Such a practice is fraught with the danger that the government will be accused of overreaching.

*United States v. Ataya*, No. 87 CR 198 (Duff, J.).

Once he was before this court, Ataya moved to dismiss indictment No. 87 CR 198 on the grounds that it was barred by the double jeopardy clause. The double jeopardy question could not be reached, however, until this court considered whether Ataya had breached his plea agreement. *See Ricketts v. Adamson*, —— U.S. ——, 107 S.Ct. 2680, 2684 n. 3, 97 L.Ed.2d 1 (1987); Note, *Double Jeopardy, Due Process, and the Breach of Plea Agreements*, 87 Colum. L.Rev. 142, 143 (1987). The proper procedures to be followed when a defendant has allegedly breached a plea agreement are set out in *United States v. Verrusio*, 803 F.2d 885 (7th Cir.1986).

*Verrusio* holds that at a minimum, the defendant is entitled to an evidentiary hearing upon a motion to dismiss the second indictment because of the prior plea bargain. *Id.* at 889. The government bears the burden of persuasion at the hearing, and is required to show that the defendant breached his plea agreement by a preponderance of the evidence. *Id.* at 895.

This court held the *Verrusio* hearing on July 7, 10, 13, and 31, 1987.[4] Besides the narration set forth above, the hearing illuminated three important facts: first, that at the time of the meetings with Ataya, no decision had been made regarding Syammach's reprosecution; second, that the government regarded Ataya's testimony as helpful but not necessary to a conviction of Syammach; and third, that paragraph eleven of Ataya's plea agreement was boilerplate language used in many cases, whereas the limiting language in paragraph twelve was fairly unusual and perhaps even unique.

## DISCUSSION

It is well settled that a plea agreement is a contract, which must be interpreted in light of the parties' reasonable expectations and the essence of the particular agreement. *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985) (quoting *United States v. Mooney*, 654 F.2d 482, 486 (7th Cir.1981)). Yet this contractual approach to plea agreements has been modified by "the unique concerns created by ambiguous provisions in such agreements...." *Id.* As a result, "[t]he Government may not rely on favorable judicial construction to cure significant ambiguities in its plea agreements. Plea agreements need to be carefully drawn and understood by all parties...." *Id.* (quoting *United States v. Cook*, 668 F.2d 317, 321 (7th Cir.1982)).

Paragraphs eleven and twelve of Ataya's plea agreement were indeed ambiguous. One interpretation, the government's, is that paragraph twelve merely enumerates one of the pledges contained in paragraph eleven. But another interpretation, adequately supported by the facts of this case and the evidence presented at the *Verrusio* hearing, is that paragraph twelve contained the only promise made by Ataya with respect to the giving of testimony.

The latter analysis is credible for a variety of reasons. Certainly both parties believed that there would be a single trial involving Mustafa Syammach; the government does not argue the contrary. Both parties also believed that once Ataya was sentenced, his part of the bargain would have been completed. *See* Transcript of Proceedings before Judge Plunkett, September 25, 1986, where in regard to when Ataya would be sentenced, the following colloquy took place:

> THE COURT: Well, do you also have a condition in [the plea agreement] that he cooperate fully? Wouldn't you prefer that you wait and see if there is going to be a trial?
>
> MR. FOLEY: Absolutely, Judge.

Def. Ex. 1 at 22.

Other pieces of evidence weighing in favor of Ataya's reading of the plea agreement are paragraph thirteen and the dis-

---

4. The government correctly notes that this hearing should have been held by Judge Plunkett, to whom the plea originally was submitted. *United States v. Fields*, 766 F.2d 1161, 1168 (7th Cir.1985). In the absence of an objection by either party, this court presumes that it has the authority to adjudicate the matter at hand.

cussion regarding it. Paragraph thirteen provides that Ataya agrees to a one-year term of imprisonment and to allow the government to deport him afterwards. Reading this paragraph in connection with paragraph eleven suggests not that Ataya agreed to cooperate in *any* related proceeding, as the government contends, but that once the matter before Judge Plunkett was concluded, Ataya's part of the bargain was over. Judge Plunkett recognized this when he said almost one year ago,

> THE COURT: So in a few months you will be able to head on home. I wish you well, Mr. Ataya.

Transcript of Proceedings before Judge Plunkett, November 13, 1986, Def. Ex. 1 at 60. If we were to accept the government's interpretation of paragraph eleven despite the facts set out above, there would be no clear limit to the cooperation expected from Ataya. Such a result is directly contrary to the authorities cited earlier.

A final reason for adopting Ataya's version of the agreement was supplied by Assistant United States Attorney Foley. As the drafter, Foley testified that paragraph eleven was a standard provision used in nearly all plea agreements. In contrast, paragraph twelve was formulated for this particular case, and Foley was unaware of even one other plea agreement with similar language. Two well-known tenets of contract interpretation are that specific provisions override general ones, and that matters specially drafted by the parties prevail over boilerplate clauses. *See* 4 S. Williston, *Contracts* §§ 619, 622 (3d ed. 1957).

Even if it could be said that Ataya's construction is incorrect, a proposition with which this court strongly disagrees, the government has not shown by a preponderance of the evidence that Ataya substantially breached his plea agreement. *See United States v. Gonzalez–Sanchez*, 825 F.2d 572, 578 (1st Cir.1987); *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir. 1976); *United States v. Bielak*, 660 F.Supp. 818, 824 (N.D.Ind.1987). Because the government had not decided whether to reprosecute Syammach at the time of its discussions with Ataya, the most that could be said of the latter's actions is that they constituted an anticipatory breach. But an anticipatory breach does not arise where, as here, one party acts in good faith when insisting on his own interpretation of the agreement, even if that interpretation is wrong. *See* 11 S. Williston, *Contracts*, § 1322 at 132–33 (3d ed. 1957); 4 A. Corbin, *Contracts*, § 973 at 911 (1951).

Moreover, in determining whether a breach is material, courts should examine the following factors:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure....;
>
> (e) the extent to which the behavior of the party failing to perform comports with standards of good faith and fair dealing.

*Restatement (Second) of Contracts* § 241 (1981). In this case, the government obtained Ataya's testimony at Syammach's first trial. It offers no good explanation why the giving of that testimony is not itself sufficient compliance with the plea agreement. Ataya, on the other hand, is incarcerated in this country pursuant to an agreed detention order, and has served over six months longer than he should have. While Ataya is not likely to change his mind and testify, this court has found that he acted in good faith, and thus is entitled to stand on his position.

## CONCLUSION

Defendant's motion to dismiss the indictment is granted.