**UNITED STATES of America**

v.

**John Gerald GERANT.**

**Crim. No. H–91–0126.**

United States District Court,
D. Maryland.

Oct. 3, 1991.

---

Andrew G.W. Norman and Raymond Bonner, Asst. U.S. Attys., Baltimore, Md., for the Government.

E. Thomas Maxwell, Jr., Baltimore, Md., for defendant.

## MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

In this criminal case, defendant John Gerald Gerant has been charged in a five count superseding indictment with a conspiracy to distribute cocaine and marijuana in violation of 21 U.S.Code § 841 and 846, with engaging in a continuing criminal enterprise in violation of 21 U.S.Code § 848 and with related counts of possessing cocaine with intent to distribute. The conspiracy allegedly occurred between April 1983 and June of 1986.

Represented by experienced counsel, defendant has filed a number of pretrial motions, some of which have been ruled on. Presently before the Court for ruling are defendant's motion to dismiss the indictment and defendant's motion for specific performance of the proffer agreement of February 5, 1987 between defendant and the government. Both of these motions present the question whether defendant breached agreements entered into between him and the government. If so, the government would be free to use against defendant at the trial of this case information furnished by him. If there was no material breach, then defendant would have immunity from prosecution for the matters in suit.

Memoranda in support of and in opposition to the two pending motions have been submitted by the parties and reviewed by the Court. In addition, a lengthy evidentiary hearing has been held, at which both the government and the defendant have presented evidence pertaining to the issue before the Court. Many witnesses were called by the government, and defendant himself and also his former attorney testified at the hearing. Numerous exhibits were admitted in evidence including, in particular, defendant's testimony before a grand jury in this Court on February 18, 1987 and his testimony in the trial of *United States v. Silvers, et al.*, Criminal No. Y-87-0144, which was held in this Court before Judge Maletz in December of 1987 and January of 1988. The Court has now had an opportunity to review all the exhibits in this case and in particular defendant's testimony at the *Silvers* trial.

In December 1986, Drug Enforcement Agent Alexander Smith and federal prosecutors were investigating the *Silvers* drug smuggling operation. Defendant in Florida was served with a subpoena requiring him to appear before a federal grand jury in this Court investigating the Steven Silvers and Marshall Jones narcotics conspiracy. On February 5, 1987, Gerant and his attorney, Thomas Dillard, met in Florida with Gregory Welsh, Assistant United States Attorney in this District, and with various agents of the Drug Enforcement Agency (the "DEA"), the Federal Bureau of Investigation (the "FBI"), and the Internal Revenue Service (the "IRS"). After some discussion, Gerant and the government entered into a written proffer agreement which provided, *inter alia*, as follows:

1. Except as otherwise provided in paragraph [ ] ... three, no statements made or other information provided by [Gerant or his counsel] during the proffer will be used against [Gerant] in any criminal case.

   \*    \*    \*    \*    \*    \*

3. [Gerant's] complete truthfulness and candor are express conditions to the undertakings of the Government set forth in this [agreement]. Therefore, the Government may use statements made or other information provided by [Gerant or his counsel] during the proffer under the following circumstances:

   \*    \*    \*    \*    \*    \*

   b. If the Government should ever conclude that [Gerant] has knowingly withheld material information from the Government or otherwise has not been completely truthful and candid with the Government, the Government may use against him for any purpose any statements made or other information provided by [Gerant or his counsel] during the proffer. If the Government does ever so

conclude, it will notify [Gerant] prior to making such use of any such statements or other information.

Thereafter, defendant described his own extensive involvement in narcotics smuggling and supplied information to government attorneys and government agents concerning the drug distribution network of Steven Silvers and Marshall Jones. Subsequently, defendant entered into an oral agreement relating to his cooperation in two separate federal districts, namely the District of Maryland and the Southern District of Florida. As stipulated, the terms of this oral agreement were as follows:

*District of Maryland*

Gerant agreed to cooperate fully with the government by providing truthful information and truthful testimony before grand juries and in trials. In return for this, the government agreed not to prosecute Gerant for past criminal offenses. In the event that Gerant lied to the government during his cooperation, or provided false testimony before Grand Juries or in court, the government would be released from its obligation not to prosecute him and could bring charges against him. In any such prosecution, the government would be free to use against the defendant information and testimony provided by him as well as documents turned over by him to the government during his cooperation.

*Southern District of Florida*

Gerant agreed to cooperate fully with the government by providing truthful information and truthful testimony before grand juries and in trials. In return for this, the government agreed not to prosecute Gerant for controlled substance offenses and instead agreed to allow Gerant to plead guilty to a misdemeanor violation of federal income tax laws. In the event that Gerant lied to the government during his cooperation, or provided false testimony before Grand Juries or in court, the government would be released from its obligation not to prosecute him and could bring charges against him. In any such prosecution, the government would be free to use against the defendant information and testimony provided by him as well as documents turned over by him to the government during his cooperation. Gerant further agreed to provide a full accounting of his personal and corporate finances to the Internal Revenue Service so that a determination could be made as to what taxes and penalties were owed by him to the United States Government.

During argument in this case, counsel for the government suggested that there were two separate oral agreements. However, the stipulation between the parties indicates that only one post-proffer oral agreement was reached between the government and Gerant, although this one agreement did involve two separate federal districts.

On February 18, 1987, defendant testified before a grand jury in this Court. At or about the same time, he began cooperating with the FBI in the Southern District of Florida. Although not required by the agreement, he also served in an undercover capacity. In December of 1987 and January of 1988, defendant testified at great length for the government at the *Silvers* trial. *United States v. Silvers*, Criminal No. Y–87–0144.

During 1988 and 1989, defendant continued to cooperate with the government in Florida and act there in an undercover capacity on behalf of the FBI and the DEA. Defendant was a pilot, and his undercover activities included making flights and importing narcotics from overseas for delivery to individuals who were subsequently arrested and prosecuted. Following the conclusion of the *Silvers* trial and throughout 1988 and 1989, Special Agent Smith of the DEA interviewed individuals and obtained documents pursuant to the government's ongoing investigation of the *Silvers* drug distribution network. These interviews and documents led Special Agent Smith and federal prosecutors in Baltimore to conclude that defendant had lied and withheld evidence from the government during his proffer, during his debriefings, during his grand jury testimony, and at the *Silvers* trial.

In August of 1989, defendant and his attorney, Dillard, met with Special Agent Smith and Assistant United States Attorney Gregory Welsh to discuss the government's contentions that defendant had not told the truth and had withheld evidence in violation of his agreements with the government. Defendant maintained at the time that the testimony and the information which he had provided were accurate and complete. The government continued its investigation, and on April 24, 1991, defendant was indicted by a grand jury in this district. A superseding indictment was returned on June 12, 1991 which added as a defendant in this case Benjamin A. Rhodes. Rhodes recently entered into an agreement with the government whereby he will plead guilty to another charge in Florida pursuant to Rule 20 of the Federal Rules of Criminal Procedure. Rhodes testified at the motions hearing in this case.

In support of his motion to dismiss and his motion for specific performance of the agreement, defendant contends that he has substantially complied with the material provisions of his agreements with the government. Defendant asks this Court to require specific performance by the government of the agreements and accordingly to dismiss the indictment. By way of response, the government contends that defendant has breached both the February 5, 1987 proffer agreement and the subsequent oral agreement which defendant made with government attorneys from both Maryland and Florida. In its memorandum filed in opposition to the two motions, the government asserts that defendant gave false, incomplete and evasive testimony in fourteen different respects.

It is apparent that many of these alleged instances overlap or would not constitute material breaches of the agreements in question. Essentially, the material areas of disagreement between the parties are as follows: (1) whether defendant during meetings with government officials and during his grand jury and trial testimony claimed to be only a pilot or transporter of cocaine when, in fact, he had been involved in extensive actual cocaine dealings and planning, particularly with respect to his involvement in the importation of cocaine in July of 1985 (so-called Load No. 1) and in August of 1985 (so-called Load No. 2); (2) whether during his testimony at the *Silvers* trial defendant truthfully testified that his total earnings from all drug activities were $550,000 when, according to the government, he had made over $1.5 million from drug trafficking in 1985 alone; and (3) whether during his testimony at the *Silvers* trial defendant had truthfully testified that he had cooperated with law enforcement officials since 1982 when, according to the government, he in fact did not begin to cooperate until February 5, 1987.

It is well established that the government may not unilaterally determine whether a defendant in a criminal case has breached a material provision of a plea or cooperation agreement. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Simmons*, 537 F.2d 1260, 1261 (4th Cir.1976). It is for the trial court to determine from adequate evidence whether there has been a substantial breach of the agreement reached. *Simmons, supra* at 1261, 1262. A cooperation-immunity agreement is contractual in nature and subject to the application of contract law standards. *United States v. Irvine*, 756 F.2d 708, 710–11 (9th Cir.1985).

A plea or other agreement between a defendant and the government involves not only principles of contract law but also considerations of due process. Because important due process rights are involved, plea or other negotiations must accord a defendant requisite fairness and must be attended by adequate safeguards to insure the defendant what is reasonably due under all the circumstances. *Santobello, supra* 404 U.S. at 262, 92 S.Ct. at 499; *Calabrese, infra* at 1390. A defendant in situations such as the one before the Court is thus entitled to be treated with fundamental fairness as embraced within substantive due process guarantees. *Cooper v. United States*, 594 F.2d 12, 18 (4th Cir.1979).

■ A defendant's failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement. *Simmons, supra* at 1261; *United States v. Calabrese,* 645 F.2d 1379, 1390 (10th Cir.1981). It is the government which has the burden of demonstrating by a preponderance of the evidence that a defendant has breached a material provision of a cooperation agreement. *Calabrese, supra* at 1390; *United States v. Verrusio,* 803 F.2d 885, 894–895 (7th Cir. 1986). If the government has succeeded in showing a material breach by the defendant, the defendant has forfeited his immunity, and the government is not limited to a prosecution for perjury. *United States v. Castelbuono,* 643 F.Supp. 965, 969 (E.D.N.Y.1986).

■ On the extensive record produced at the hearing in this case, this Court finds and concludes that the government has met its burden of demonstrating by a preponderance of the evidence that defendant Gerant breached material provisions of both the proffer agreement of February 5, 1987 and the later oral agreement reached with respect to his cooperation in Maryland and Florida. Defendant argues that he fully complied with the oral agreement insofar as his cooperation in Florida was concerned and that although not required to do so, he even acted in an undercover capacity in Florida and provided information which led to the prosecution of others. However, such compliance hardly relieves him of the duty he had to comply with the proffer agreement and the oral agreement insofar as his testimony and activities in Maryland were concerned.

The evidence discloses that defendant made false and incomplete statements to agents, that he intentionally omitted critical and material information which he was required to give and that he falsely testified at the trial in the *Silvers* case. His false statements and false testimony related to material matters. Indeed, his testimony at the *Silvers* trial was an important part of the government's case, and his breach of the agreement could well have had (and may still have) an adverse effect on the government's success in prosecuting the defendants who were convicted at the trial before Judge Maletz.

What the record here shows is that defendant Gerant was an unprincipled and opportunistic individual who lived a life ·of crime and deception after starting out as a police officer in Miami. He deceived his narcotics co-conspirators; he deceived the government; and he presented false testimony to a jury in this Court, all for substantial personal gain. From the outset, defendant's motive was pure greed. Even while a Miami policeman, he started his drug dealings, admittedly so that he could make substantial sums of money.

When he was presented in 1987 with an opportunity to gain immunity from his extensive drug operations, he still could not resist the temptation to withhold, solely for economic reasons, critical information. Having been a police officer himself, defendant was knowledgeable about law enforcement procedures and he thought that he could gain immunity under the agreements with the government and still withhold important financial information. He sought to insulate himself from prosecution and at the same time retain large portions of his ill gotten gains. In other words, he wanted to have his cake and eat it too. Obviously, if he described to government agents or on the witness stand the full extent of his involvement with Rudd, DeAntoni, Rolle, Rhodes and others in the smuggling and distribution of narcotics and if he acknowledged the very substantial sums he earned from those operations, defendant knew that he would suffer substantial financial loss. All of his earnings from drug smuggling would have to be reported in his tax returns. Therefore, he held back when he spoke to government agents and when he testified at the *Silvers* trial. Had he truthfully told of the large amounts he had earned from his illegal drug smuggling operations (and he was required by the oral agreement to provide in Florida a full accounting to the IRS of personal finances), he would have been required to pay substantial sums as back income taxes, penalties and interest. To avoid this, he hid both the full extent of his participation in Load

No. 1 and Load No. 2, and he did not give a true and accurate recounting of his drug earnings in 1985 to government agents and at the *Silvers* trial.

As noted, there are three material areas of disagreement, and the Court finds that defendant breached his agreements with the government in all three areas, as follows: (1) with reference to the role he played in connection with Load No. 1 in July of 1985 and Load No. 2 in August of 1985; (2) with reference to the amount of money he earned from his illegal drug activities; and (3) with reference to his claimed status as a cooperating individual or government informant since 1982. False information or false testimony in any one of these three areas would be sufficient to constitute a substantial breach of the agreements with the government as to a material matter. The evidence produced at the hearing discloses that defendant Gerant failed to comply with the agreements with respect to all three of these matters.

His testimony at the *Silvers* trial was replete with false statements. He testified that he was paid only by Stephen Silvers. This was false. He was paid $678,000 in cash by Rudd, hardly an inconsequential sum. Yet he never mentioned this to government law enforcement authorities or at the *Silvers* trial. And, as indicated by the testimony at the motions hearing, there were other large cash payments received by defendant from persons other than Steven Silvers. Defendant testified at the trial that he sold airplanes to Silvers and DeAntoni. This likewise was false. And the record contains many other examples of false testimony, not necessary to recount in this opinion.

During his debriefings and at the *Silvers* trial, defendant took the position that essentially he was merely the pilot who transported the large amounts of cocaine involved. Evidence produced at the motions hearing establishes that he was a principal participant in these narcotics transactions and that very substantial sums of money were paid to him by others. In this connection, the Court will credit the testimony of both Allan Rudd and Anthony DeAntoni. Their testimony indicates that defendant Gerant was intimately involved not only in the transportation of hundreds of kilos of cocaine but also in the planning of the operations and the ultimate distribution of portions of the smuggled drugs. Defendant Gerant throughout in his debriefings and his testimony at the *Silvers* trial, attempted to minimize his involvement obviously so that he would not have to account to the IRS for the large sums that he received.

Next, on three separate occasions during the *Silvers* trial, Gerant testified that the amount earned by him from drug operations during 1985 was some $550,000. Evidence produced by the government at the hearing indicates that his actual earnings were at least three times that figure, or $1.5 million. This was hardly a *de minimis* mistake. Indeed, Gerant was pressed hard on this subject at the *Silvers* trial by counsel for the defendants, and he repeatedly gave the $550,000 figure. During his testimony at the motions hearing in this case, he claimed that he had at one time or another at the *Silvers* trial testified as to all amounts actually received. This contention is without support. A review of the transcript pages cited by defendant's attorney in the light of the evidence produced at the motions hearing satisfies the Court that defendant did not truthfully disclose at the *Silvers* trial his earnings from drug operations.

Finally, defendant's testimony at the *Silvers* trial that he had been acting since 1982 as a government informant and cooperating individual was absolutely false. Consistent and overwhelming testimony was presented by government agents at the motions hearing that at no time prior to the proffer agreement of February 5, 1987 was defendant an informant or a cooperating individual working with agents of the federal government. Certainly had he been so acting he should have so informed Agent Smith and Assistant United States Attorney Welsh during the various debriefings.

Counsel for defendant advances an agency theory. But essentially the only evidence to support such a theory is defendant's own testimony that he believed at various times that he was acting for and cooperating with the government. This testimony will be rejected. Obviously, he could not have been a government agent if law enforcement officials had no knowledge that he was so acting. As knowledgeable as defendant was about law enforcement activities, he could not have and did not in fact believe that he was cooperating with government agents with their knowledge and approval. The Court so finds.

The evidence indicates that defendant was enamored with the so-called public authority defense. On occasion, and in particular when he was prosecuted in South Carolina, he indicated an attempt to rely on this defense himself. On other occasions he suggested to Rhodes and Seeright that they perjure themselves and employ a similar specious defense, even though no facts existed to support it. Defense counsel at the *Silvers* trial jumped on defendant's false testimony that he had acted as a government agent and argued to the jury that since Gerant had lied in claiming that he was a cooperating individual with the government, the rest of his testimony should not be believed. It is thus apparent that this false testimony was indeed extremely material in the *Silvers* trial.

Gerant's credibility at the motions hearing was an important issue. After hearing and seeing him on the witness stand and comparing his testimony with that given at the *Silvers* trial, I have concluded that what he said on the witness stand, insofar as the essential issues are concerned, is unworthy of belief. Defendant's account of the critical events was evasive and self-serving. Where his accounts conflicted with the version given by other witnesses, I accept the testimony of those other witnesses.

Counsel for defendant contends that the government here violated defendant's right to fundamental fairness by undertaking to abrogate the agreements reached. But there was no violation of defendant's due process rights here. It was hardly funda-mentally unfair for the government, when in possession of substantial evidence that defendant had lied at the *Silvers* trial and had jeopardized a successful prosecution of the individuals who were convicted at that trial, to seek to void the agreements. Prosecuting defendant because of his false testimony was hardly a course of action which the government enthusiastically embraced. By taking the position that they have in this case, the government was unable to use Gerant in other investigations and is now facing future difficulties in connection with the persons convicted at the *Silvers* trial. Indeed, had the government not taken the position which it has in this case, it would have been fundamentally unfair to others who have already been prosecuted.

Throughout the motions hearing, counsel for defendant has continually pointed to Gerant's undercover activities in Florida which involved dangerous flights out of the country and which resulted in successful prosecutions of some 8 or 9 other individuals. It is argued that defendant's cooperation with the government in Florida amounts to substantial performance of the contract as a whole and should excuse any failure on his part to fully perform the oral agreement in Maryland. This contention must be rejected. Defendant was under a duty to comply with the agreement both in Florida and in Maryland. His failures in Maryland were substantial and related to material aspects of the bargain. Such failures were adequate justification for the government to take the position that the oral agreement had been breached and that defendant was not entitled to immunity for the crimes in question. Moreover, he did not comply with the requirement that he provide a full accounting of his personal finances to the I.R.S. in Florida. The proof presented at the hearing supports a finding that defendant's breaches were substantial and material.

For all these reasons, defendant's motion to dismiss the Indictment will be denied, and defendant's motion for specific performance will also be denied.