UNITED STATES of America, Plaintiff–Appellee,

v.

John Gerald GERANT, a/k/a Jerry, Defendant–Appellant.

No. 92–5172.

United States Court of Appeals, Fourth Circuit.

Argued March 4, 1993.

Decided June 9, 1993.

Edward Thomas Maxwell, Jr., Baltimore, MD, argued (Byron L. Warnken, Owings Mills, MD and Clarke F. Ahlers, Columbia, MD, on brief), for defendant-appellant.

Andrew George Warrens Norman, Asst. U.S. Atty., Baltimore, MD, argued (Richard S. Bennett, U.S. Atty. and Bonnie S. Greenberg, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and HILL, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## OPINION

HILL, Senior Circuit Judge:

John Gerald Gerant ("Appellant") was convicted after a jury trial of one count of Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine and Marijuana, in violation of 21 U.S.C. § 846; three counts of Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1); and one count of Operating a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848. He brings this appeal arguing that the government violated its non-prosecution agreement by indicting him. The district court held a two-week evidentiary hearing after which it concluded Appellant breached the non-prosecution agreement and the indictment was therefore proper. 775 F.Supp. 182. We affirm the judgment of the district court.

## I. BACKGROUND

In January 1987 a special agent of the United States Drug Enforcement Administration ("DEA") served a Grand Jury subpoena upon Appellant for his illicit drug-related activities in the cocaine and marijuana distribution network of Steven Silvers ("Silvers"). Several days later Appellant's counsel contacted an Assistant United States Attorney for the Southern District of Florida to arrange a meeting between Appellant and the Government. This meeting took place on February 5, 1987.[1] During this meeting, Appellant proffered his services providing cooperation and information to the government. In return for Appellant's cooperation, the government agreed to enter a nonprosecution agreement ("the non-prosecution agreement")[2] whereby Appellant would be im-

---

1. The meeting was attended by: Appellant, Appellant's counsel, an Assistant United States Attorney for the District of Maryland, an Assistant United States Attorney for the Southern District of Florida, a DEA agent, a Federal Bureau of Investigation ("FBI") agent, and an Internal Revenue Service ("IRS") agent.

2. Appellant actually entered into an agreement with the District of Maryland and an agreement with the Southern District of Florida. The parties stipulated that only one post-proffer agreement was reached between the government and Appellant, although the one agreement involved two separate federal districts. The agreement was never reduced to a final written form.

mune from prosecution for his past drug activities. Appellant agreed to cooperate fully with government drug investigations, testify before grand juries and in trials, plead guilty to a misdemeanor tax count, and provide a full accounting of his finances to the IRS in exchange for immunity from prosecution for his past criminal activities. The non-prosecution agreement expressly conditioned Appellant's immunity on his complete candor and truthfulness, stating:

> In the event that Gerant lied to the government during his cooperation, or provided false testimony before Grand Juries or in court, the government would be released from its obligation not to prosecute him and could bring charges against him. In any such prosecution, the government would be free to use against the defendant information and testimony provided by him as well as documents turned over by him to the government during his cooperation.

Pursuant to his agreement to cooperate, Appellant provided a substantial amount of information about various drug operations to federal prosecutors, the DEA, the FBI, and the IRS. Appellant also worked with the FBI and the DEA in the Southern District of Florida as an undercover agent on many occasions with duties including meeting and negotiating with drug dealers, taping conversations with drug dealers, and making drug trafficking flights.

Additionally, Appellant provided inculpatory testimony on the government's behalf in its case against Silvers and his co-conspirators. During the eight week trial of Silvers ("the Silvers trial"), Appellant testified about two loads of cocaine which Silvers and his co-conspirators imported in 1985 ("Load 1" and "Load 2"). With regard to Load 1, Appellant said that he acted merely as a pilot and transporter, and he testified that he declined to participate in Load 2 because he did not like the plan devised by Silvers, although he did get paid a small amount for making some transportation arrangements. Appellant responded to repeated questions on cross-examination that he estimated the total amount

of his earnings from his drug trafficking career to be approximately $550,000. Appellant also repeatedly claimed to have been an informant for several different law enforcement agencies since 1982; including the FBI, the United States Customs Service, and the Florida Department of Law Enforcement. The Silvers trial resulted in convictions of all defendants on all counts.

In 1988 and 1989 government law enforcement officials obtained information during continuing drug investigations that led them to the conclusion that Appellant had both lied and withheld evidence during his proffer, his debriefings, his Grand Jury testimony, and his testimony in the Silvers trial. The government commenced a criminal investigation of Appellant which resulted in a five-count indictment in June 1991.[3] Appellant was charged with Conspiring to Distribute and to Possess with Intent to Distribute Cocaine and Marijuana, three counts of Possession with Intent to Distribute Cocaine, and Maintaining a Continuing Criminal Enterprise. Appellant filed several pre-trial motions, including a motion to dismiss the indictment and a motion requesting a court order directing specific performance of the non-prosecution agreement. The government answered these motions contending that Appellant had breached the non-prosecution agreement by lying and withholding evidence.

The district court conducted a two-week hearing at which it heard the testimony of numerous witnesses from both the government and Appellant. The court found by a preponderance of the evidence that Appellant did materially breach the immunity agreement by intentionally omitting critical and material information and by testifying falsely at the Silvers trial. Specifically, the district court found that Appellant breached the non-prosecution agreement with respect to the role he played in connection with Load 1 and Load 2, with respect to the amount of money he earned from his illegal drug activities, and with respect to his claimed status as a government informant since 1982. On Appellant's motion for reconsideration, the district

---

**3.** Appellant was originally indicted in April 1991. The government filed a superseding indictment in June 1991 naming Benjamin Rhodes as a codefendant and leaving the charges against Appellant intact.

court found that the government had proved beyond a reasonable doubt that Appellant breached the non-prosecution agreement. After this evidentiary hearing, Appellant was tried and convicted on all counts.

Appellant contends on this appeal that the district court erred by finding that Appellant materially breached the non-prosecution agreement. Appellant also argues that the finding of a breach of the non-prosecution agreement should have been made by a jury rather than the district court and urges reversal on this basis.

## II. *DISCUSSION*

### A. *Material Breach*

■ Appellant argues on appeal that the government failed to prove adequately that he breached the non-prosecution agreement. An immunity agreement invokes the same constitutional due process concerns as a plea agreement, and therefore, in this Circuit, the breach of such an agreement must be proved by a preponderance of the evidence. *See United States v. Conner*, 930 F.2d 1073, 1076 (4th Cir.), *cert. denied* — U.S. ——, 112 S.Ct. 420, 116 L.Ed.2d 440 (1991); *Young v. United States*, 747 F.Supp. 305, 308 (E.D.N.C.1990). The district court found that Appellant materially breached the non-prosecution agreement first by a preponderance of the evidence and, on reconsideration, beyond a reasonable doubt. We review the district court's factual findings on a clearly erroneous standard. *United States v. Arnoldt*, 947 F.2d 1120 (4th Cir.1991), *cert. denied* — U.S. ——, 112 S.Ct. 1666, 118 L.Ed.2d 387 (1992).

■ The district court found that Appellant materially breached the non-prosecution agreement by intentionally omitting and withholding information and by providing false testimony in three areas. First, the district court found that Appellant misrepresented his role in connection with Load 1 and Load 2. Appellant alleged that he served merely as a pilot and transporter for Load 1 and played a minimal role in arranging transportation for Load 2. The district court determined that these allegations were false because Appellant had in fact acted in a

much larger capacity as a planner and organizer of these two drug shipments. The district court based this finding on the testimony of several witnesses whose credibility it judged to be greater than that of Appellant. We will not disturb credibility choices of the district court as these choices are firmly committed to the district judge's discretion. Thus, the district court's finding that Appellant lied with respect to his involvement in Load 1 and Load 2 is not clearly erroneous.

The second finding of material breach stems from Appellant's repeated testimony of his drug income. At the Silvers trial, Appellant testified on three separate occasions that his total income from drug trafficking was approximately $550,000. The district court relied on evidence presented by the government at the pre-trial evidentiary hearing that indicated Appellant had earned significantly greater amounts in his drug career. This evidence included the testimony of one witness who stated that Appellant received $678,000 for Load 1 alone. The district court found that Appellant had earned at least $1.5 million, three times the figure that Appellant repeatedly asserted. The district court's finding was based on the testimony of both law enforcement officials and Appellant's fellow drug dealers. The district court found that Appellant underestimated his income to shield substantial assets from the attention of the IRS to avoid liability for back taxes, penalties and interest. We cannot say that the district judge's finding was clearly erroneous.

The third basis for the district court's finding of material breach is Appellant's assertion that he had been acting as a government informant and cooperating individual since 1982. The district court concluded that this assertion was absolutely false. The basis for this conclusion is the unanimous testimony of agents from all the law enforcement agencies involved that Appellant had never served as a government informant prior to entering the non-prosecution agreement at issue. During the Silvers trial, defense counsel argued extensively to the jury that because Appellant lied about being a government informant, the rest of his testimony should be discredited. The district court found that Appellant's

false testimony was thus extremely material in the Silvers trial. Given the overwhelming support for the district court's conclusion, we find no error.

■ Appellant argues, citing no authority, that a finding of a breach of the non-prosecution agreement should be weighed against his substantial performance. In essence, Appellant contends that because he provided substantial amounts of useful information and services for the government, he should be held to have substantially complied with the agreement. The government, in other words, got the benefit of its bargain. This argument ignores the express condition in the nonprosecution agreement that Appellant would come forth with complete truthfulness and candor. Appellant did provide the government with useful information about drug operations, but this fact does not excuse Appellant from the conditions to which he agreed. Appellant's breach of the agreement has seriously impaired ongoing drug investigations and prosecutions. For instance, the defendants in the Silvers trial have moved for a new trial subsequent to their discovery of the pervasive false testimony provided by Appellant. Also, the government is no longer able to use Appellant as a witness in other investigations. Furthermore, Appellant failed to give a full accounting of his finances to the IRS. Appellant's breach of his agreement to be completely truthful will not be overlooked simply because he furnished some useful information.[4] Therefore, we affirm the district court's holding that Appellant breached the non-prosecution agreement.

### B. *Jury Question*

■ Appellant contends that the determination of a breach of a non-prosecution agreement should be a question for the jury, not the district judge. In this case, the district court conducted a two-week evidentiary hearing on the question of whether Appellant breached the non-prosecution agreement. In support of his argument that the question of a breach of an immunity agreement is properly for the jury, Appellant asserts that finding a breach of such an agreement is tantamount to obtaining a conviction and so the Sixth Amendment right to trial by jury requires that this finding be made by a jury.

Although we have discovered no cases considering the question of whether a jury should determine a breach of a pre-trial immunity agreement, several cases have held that the district court, rather than a jury, should determine whether a plea agreement has been breached. *See, e.g., United States v. Gonzalez–Sanchez,* 825 F.2d 572, 578 (1st Cir.), *cert. denied Latorre v. United States,* 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987) ("The factual determination whether the plea agreement has been breached lies with the trial judge. [Defendant] received the process that was due; he is not entitled to a jury determination of the question."); *United States v. Verrusio,* 803 F.2d 885, 888–89 (7th Cir.1986) (Judicial determination of breach of plea agreement after evidentiary hearing satisfies demands of due process); *United States v. Khoury,* 755 F.2d 1071, 1073 (1st Cir.1985) ("A question as to the terms, or even the very existence, of a plea agreement, is one of fact that must be resolved by the district court."); *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir.1976) (judge determines whether defendant failed to perform condition of plea bargain). Because a non-prosecution agreement implicates the same due process concerns as a plea agreement, we conclude that the rule that a breach of a plea agreement is subject to judicial determination should obtain in situations involving a breach of an immunity agreement.

This conclusion is supported by *United States v. MacDougall,* 790 F.2d 1135 (4th Cir.1986). In *MacDougall* this Court considered the issue of whether a jury must determine whether a prosecution is barred under

---

4. Although we hold that Appellant breached the non-prosecution agreement despite the fact that he provided useful information, we do not intend to foreclose future application of a substantial compliance argument. There may be a case where the extent of information and cooperation provided by a defendant who has trivially breached a nonprosecution agreement is so great that the court is persuaded that the defendant substantially complied with the agreement. This is simply not such a case.

**510**

double jeopardy principles. In deciding this question, we drew a distinction between those claims that involve the issue of a defendant's guilt or innocence and claims which involve the right of the government to bring the action itself. We held that issues not involving the defendant's guilt or innocence, which constitutionally must be decided by a jury, may be resolved by the district court. *MacDougall*, 790 F.2d at 1142. Because the issue of whether Appellant breached the non-prosecution agreement involves the right of the government to prosecute Appellant rather than Appellant's guilt or innocence, the reasoning of *MacDougall* dictates that this issue be resolved by the district court.

We hold that Appellant was not entitled to a jury determination of his breach of the non-prosecution agreement. The evidentiary hearing conducted by the district court sufficed to satisfy due process.[5]

### III. *CONCLUSION*

We hold that the government satisfied its burden of proving that Appellant breached the non-prosecution agreement. Furthermore, Appellant was not entitled to a jury determination of such breach. The judgment of the district court is

*AFFIRMED.*

Torres, Jorge Ramirez, Reyes Ramirez, Ramon Ramirez–Muniz, Candido Ramos, Jose Luis Rodriguez, Jose Serano, Hermitano Soto, Antonio Toro–Flores, Randy Buckley, Dean Clarke, Plaintiffs–Appellants,

v.

UNITED STATES DEPARTMENT OF LABOR; William E. Brock, Secretary of the United States Department of Labor; William Haltigan, Regional Administrator of Region III, Employment and Training Administration, Defendants–Appellees,

and

Hepburn Orchards, Incorporated; Fairview Orchards Associates, Defendants.

Frederick County Fruit Growers' Association, Incorporated, Amicus Curiae.

No. 92–2323.

United States Court of Appeals, Fourth Circuit.

Argued March 29, 1993.

Decided June 9, 1993.

---

5. Appellant also contends that due process requires that he should have been given an opportunity to waive his right to a jury determination of a breach of the non-prosecution agreement

prior to entering the agreement. Because we conclude that Appellant had no right to a jury determination of a breach, this waiver argument is untenable.