# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, D.C.

## UNITED STATES

### v.

## Dionne M. BULLA
### Storekeeper First Class (E-6), U.S. Coast Guard

## CGCMS 24232

## Docket No. 1171

## 16 May 2003

Special Court-Martial convened by Commander, U.S. Coast Guard Telecommunication & Information Systems Command, Alexandria, Virginia. Tried at Norfolk, Virginia, 7 March 2002.

| | |
|---|---|
| Military Judge: | CDR Matthew J. Glomb, USCG |
| Trial Counsel: | LTJG Diane M. Croff, USCG |
| Assistant Trial Counsel: | LCDR Larry R. Kennedy, USCG |
| Defense Counsel: | LT David M. Peterson, JAGC, USNR |
| Appellate Defense Counsel: | CDR Jeffrey C. Good, USCG |
| Appellate Government Counsel: | LCDR Daniel J. Goettle, USCG |

### BEFORE
### PANEL THREE
### BAUM, KANTOR, & BRUCE
Appellate Military Judges

BRUCE, Judge:

Appellant was tried by special court-martial, military judge alone. Pursuant to her pleas of guilty, entered in accordance with a pretrial agreement, Appellant was found guilty of the following offenses: two specifications of unauthorized absence in violation of Article 86, Uniform Code of Military Justice (UCMJ); one specification of wrongful use of cocaine, in violation of Article 112(a), UCMJ; and one specification of wrongful appropriation of military property in violation of Article 121, UCMJ. Appellant was sentenced to a bad conduct discharge (BCD), confinement for forty-nine days, reduction to paygrade E-1, and forfeiture of two-thirds pay for two months.[1] With respect to the adjudged sentence, the pretrial agreement allowed

---

[1] The military judge initially calculated two-thirds pay as, ". . . $1,558 exactly per month for each of the next two months." R. at 3 of Vol. II. Shortly thereafter, the military judge corrected the amount of the forfeitures. To satisfy Rule for Courts-Martial (RCM) 1003(b)(2), which specifies that maximum forfeitures must be based on the grade to

approval of all elements, requiring only that the convening authority suspend the BCD for a period of twelve months from the date of the convening authority's action. Additionally, however, the pretrial agreement included a misconduct provision that permitted the convening authority, among other things, to disregard the sentence limiting part of the pretrial agreement if the Appellant committed a violation of the UCMJ between the time the sentence was announced at her court-martial and the time the convening authority acted on the sentence.

Appellant spent forty-nine days in pretrial confinement. Her sentence to forty-nine days confinement amounted to a sentence of time served, when pretrial confinement credit was applied to that part of her sentence. Accordingly, Appellant was not confined following her sentencing on 7 March 2002. The day after her court-martial, 8 March 2002, Appellant reported back to her unit, Telecommunications and Information Systems Command (TISCOM), Alexandria, Virginia. She commenced weekend liberty at the end of the workday on 8 March 2002, and traveled to Mount Airy, North Carolina, during the weekend to attend to some personal business. When liberty expired on 11 March 2002, Appellant failed to report for duty at TISCOM. She remained in an unauthorized absence status until 13 March 2002.

Relying on the misconduct provision of the pretrial agreement to avoid having to comply with the sentence limiting part of the pretrial agreement, the convening authority approved the sentence as adjudged on 29 May 2002.

Before this Court, Appellant submits that the convening authority and the officer exercising general court-martial jurisdiction (OEGCMJ) failed to apply the correct burden of proof in finding that Appellant had violated the terms of her pretrial agreement, that the OEGCMJ erred by setting aside the sentence limiting part of the pretrial agreement based on only minor misconduct, and that Appellant's plea to the aggravating element of apprehension in an unauthorized absence specification was improvident.[2] This Court heard oral argument on this case, on 7 November 2002.

We reject the assignment of error concerning the providence of Appellant's plea to unauthorized absence terminated by apprehension without further discussion. We also reject the assignments of error concerning the enforcement of the misconduct provision of the pretrial agreement.

---

which the accused is reduced, the forfeitures were changed to, ". . . $737 exactly per month for each of two months." R. at 7 of Vol. II.

[2] I. THE SPECIAL AND GENERAL COURT-MARTIAL CONVENING AUTHORITIES FAILED TO APPLY THE CORRECT BURDEN OF PROOF IN FINDING THAT APPELLANT HAD BREACHED THE PRETRIAL AGREEMENT.

II. THE GENERAL COURT-MARTIAL CONVENING AUTHORITY ERRED BY SETTING ASIDE THE PRETRIAL AGREEMENT FOR WHAT, AT MOST, AMOUNTED TO A MINOR BREACH OF THE AGREEMENT.

III. APPELLANT'S PLEA TO THE AGGRAVATING ELEMENT OF APPREHENSION IN SPECIFICATION 1 UNDER CHARGE 1 WAS NOT PROVIDENT BECAUSE SHE ASKED HER GRANDMOTHER TO TELL CGIS WHERE SHE WAS.

Assignment of Errors and Br., dated 12 June 2002.

I.  The Misconduct Provision.

Prior to trial, Appellant entered into a pretrial agreement with the convening authority. She agreed to plead guilty to certain offenses in return for limits on her sentence, including an agreement from the convening authority to suspend any BCD adjudged for twelve months from the date of the convening authority's action.  Appellate Ex. VIII and IX.  The pretrial agreement also included, among several other provisions, a misconduct provision.  Appellate Ex. VIII.  The misconduct provision contained the following pertinent terms:

That I fully understand that if I engage in misconduct after signing this pretrial agreement, I may forfeit the benefits of this agreement.  Misconduct means any act or failure to act that violates the Uniform Code of Military Justice or any act or failure to act by which I fail to comply with this agreement.  If I engage in misconduct at any time, between when I sign this pretrial agreement and the time that I complete the sentence approved by the Convening Authority, including any period of probation or period in which a sentence component is suspended, the Convening Authority will be able to act on this agreement based on that misconduct.  The action the Convening Authority may take on this agreement depends on when the Convening Authority acts, if he chooses to act, not on when the misconduct occurs, so long as the misconduct occurs within the time frame governed by this provision.  There are three periods of time during which the Convening Authority may act on this agreement based on my misconduct:  (1) from the time Convening Authority and I sign this pretrial agreement until the time a sentence is announced at my court-martial;  (2) from the time a sentence is announced at my court-martial until the Convening Authority takes his/her RCM 1107 action; and (3) from the time the Convening Authority takes his/her RCM 1107 action until I have completed serving my entire sentence (including any period of suspension or probation, if applicable) as finally approved and executed;

* * *

That I further understand that if, based on my misconduct, the Convening Authority acts on this agreement after the time sentence is announced at my court-martial but before the time the Convening Authority takes his/her RCM 1107 action, such misconduct may be the basis for setting aside the sentencing provisions of the pretrial agreement.  Before setting aside the sentencing provisions of this agreement, however, the Convening Authority shall afford me a hearing, substantially similar to the hearing required by Article 72, UCMJ, and the procedures based on the level of adjudged punishment set forth in RCM 1109(d), (e), (f), or (g), to determine whether the misconduct occurred and whether I committed the misconduct;

* * *

Appellate Ex. VIII.

Appellant has not directly challenged the validity of the misconduct provision in this case.  For purposes of her arguments, Appellant assumes that the provision is lawful.  While we have reservations about some of the potential results of this misconduct provision, we hold that it

is a permissible term in a pretrial agreement, at least as applied in this case to a sentence element that the convening authority only agreed to suspend.[3]  We hold that the provision is authorized by RCM 705(c)(2)(D), and that Appellant has failed to establish that it violates public policy, *see United States v. Libecap*, 57 MJ 611 (C.G. Ct. Crim. App. 2002).  *Accord, United States v. Englert*, 42 MJ 827 (N-M. Ct. Crim. App. 1995).

We will now consider whether Appellant's less than three day unauthorized absence was serious enough to allow the sentence limiting part of the pretrial agreement to be set aside.

## II.  Enforceability of the Misconduct Provision Based On a Less Than Three Day Unauthorized Absence.

Appellant asserts that her less than three day unauthorized absence, after trial but before the convening authority's action, was a minor breach of the pretrial agreement.  Accordingly, she argues, it is not sufficient to allow the convening authority to avoid complying with the sentence limiting part of the pretrial agreement.  Appellant asks us to hold that in the absence of a material breach of the pretrial agreement the convening authority is required to suspend her BCD, in accordance with the sentence limiting part of the pretrial agreement.

Appellant has not cited any military precedent or rule that states that a misconduct provision may only be enforced if an accused's violation of the provision amounts to a material breach of the pretrial agreement.  The rule authorizing the use of pretrial agreements in courts-martial, RCM 705, does not state that a convening authority may enforce a misconduct provision only if there is a material breach of the pretrial agreement.  Rather, RCM 705(c), suggests that the terms and conditions of a pretrial agreement are enforceable so long as they are voluntarily agreed to by the accused, and do not deprive the accused of certain rights.[4]  Therefore, the applicable rule appears to permit enforcement of the misconduct provision according to its terms and conditions—meaning, any violation of the UCMJ by the Appellant would be sufficient to release the convening authority from his obligations under the sentencing limiting part of the agreement, if the convening authority follows the specified procedure.

However, Appellant states that federal courts require a material breach of a plea bargain agreement before excusing the Government from its obligations under the agreement, citing *United States v. Lezine,* 166 F.3d 895, 901 (7th Cir. 1999); *United States v. Crowell,* 997 F.2d 146, 148 (6th Cir. 1993); and *United States v. Tilley,* 964 F.2d 66, 71 (1st Cir. 1992).  This appears to be an accurate statement of federal criminal law.  *See also United States v. Wood,* 780 F.2d 929, 932 (11th Cir.), *cert. denied*, 107 S. Ct. 97 (1986)*; and United States v. Simmons, 537

---

[3] We might reach a different result with respect to a sentence element that the convening authority had agreed to disapprove.  The analysis of RCM 705(c)(2)(D) states that a post-trial misconduct provision is permissible because the rule requires that such a provision "provide the same protections as revocation of a suspended sentence requires" and "[g]iven such protections, there is no reason why an accused who has bargained for sentence relief such as a suspended sentence should enjoy immunity from revocation of the agreement before action but not afterward."  Manual for Courts-Martial (MCM), United States (2002 Ed.), App. 21, at A21-40.  This rationale would not extend to an agreement by the convening authority to disapprove a sentence element, because the accused would have bargained for more than a suspension of the sentence element, and the disapproval of a sentence element is final and not subject to revocation.

[4] Pursuant to RCM 705(d), either party may propose any terms or conditions not prohibited by law or public policy.

F.2d 1260, 1261 (4th Cir. 1976). This principle of federal criminal law could affect our interpretation of RCM 705.

Pursuant to Article 36(a), UCMJ, the President is authorized to prescribe rules for courts-martial, but is required to apply the principles of law "generally recognized in the trial of criminal cases in the United States district courts" "so far as he considers practicable." As we have discussed, RCM 705 does not state that a convening authority may only enforce a misconduct provision if there is a material breach of the pretrial agreement. However, the MCM also does not expressly state that such a rule was not considered practicable.

We note that there is a subsection of Rule 705 that seems to require proof of a material breach of a pretrial agreement. The discussion accompanying RCM 705(b)(2)(C), states that the government is required to establish breach of a pretrial agreement by a preponderance of the evidence if an accused moves to dismiss a re-referred charge that had been withdrawn pursuant to that pretrial agreement. Although the discussion refers to breach without any amplification, the analysis of the discussion cites federal case law. Analysis of the discussion accompanying RCM 705(b)(2)(C), MCM, App. 21 at A21-39. As discussed above, federal case law requires the government to establish a material breach before it will be excused from its obligations under a plea agreement. Accordingly, we construe RCM 705(b)(2)(C) as following federal case law and requiring that the government establish a material breach of a pretrial agreement. Thus, it appears that the President intended to follow the federal criminal law in requiring proof of a material breach and that following this principle of federal criminal law was considered practicable.

In view of that, we hold that the closely related subsection, RCM 705(c)(2)(D), should also be construed in a manner that is consistent with federal criminal law, which requires that there be a material breach before either party may be excused from their obligations under the pretrial agreement, in a case where the accused has successfully pleaded guilty. Therefore, we will decide if Appellant's less than three day unauthorized absence was a material breach of her pretrial agreement. We hold that it was.

Our research indicates that there are two ways to approach the determination of whether there has been a material breach of a plea bargain agreement. In *United States v. Frazier*, 3 Fed. Appx. 533; 2001 U.S. App. LEXIS 2702 (7th Cir. 2001), the court looked at the issue both from the point of view of a possible material breach and from the point of view of substantial compliance. *Id*. at 536. The court stated that, "[t]o determine if the breach is material, we consider the parties' reasonable expectations upon entering the agreement. *See United States v. Ataya*, 864 F.2d 1324, 1330 (7th Cir. 1988)." *Id*. Additionally, it noted that:

> The Fifth Circuit describes a finding of substantial compliance as the flip side of substantial breach: "if a party's 'nonperformance is . . . innocent, does not thwart the

purpose of the bargain, and is wholly dwarfed by that party's performance.'" *United States v. Castaneda*, 162 F.3d 832, 838 (5th Cir. 1998).

*Frazier*, 3 Fed. Appx. at 536.

We find that, upon entering into the instant pretrial agreement, the Appellant agreed not to violate the UCMJ between the time the agreement was signed by the parties and the time that Appellant completed her court-martial sentence. We find that the convening authority also reasonably expected Appellant to comply with this condition of the pretrial agreement. However, Appellant violated the UCMJ almost immediately after her court-martial by absenting herself from her unit without authority. Whatever merit there may be in Appellant's suggestion that a misconduct provision could be abused by a creative or novel application of the UCMJ, this is not such a case. There is nothing creative or novel about prohibiting unauthorized absences under Article 86, UCMJ. In fact, Appellant was convicted pursuant to the pretrial agreement of two specifications of unauthorized absence at her court-martial. We have no doubt that Appellant's almost immediate recidivism was a material breach of the pretrial agreement.

We also do not find that there was substantial compliance with the pretrial agreement by Appellant. Appellant did comply with many of the terms of the pretrial agreement—most importantly the requirement to providently plead guilty to several offenses. However, she did not comply with the provision that required her to refrain from misconduct. We do not conclude that her unauthorized absence was innocent. Appellant did not take advantage of available means of returning to her unit before liberty expired.

Neither do we conclude that her misconduct was wholly dwarfed by her performance otherwise, and we conclude that her misconduct thwarted an important purpose of the bargain. When a convening authority enters into a pretrial agreement, he or she does not repudiate the reasons for referring the case to court-martial in the first place. The misconduct provision is consistent with one of the reasons for seeking conviction and punishment for offenses—to specifically deter the accused from future misconduct. By her recidivism, Appellant not only thwarted an important purpose of the pretrial agreement, she thwarted an important purpose of her conviction and sentence.

Accordingly, we find that Appellant's less than three day unauthorized absence was a material breach of the pretrial agreement, and that it was serious enough to allow the sentence limiting part of the pretrial agreement to be set aside.

We will next decide if the convening authority and the OEGCMJ applied the correct burden of proof in the proceedings to determine if the sentence limiting part of the pretrial agreement should be set aside because of Appellant's misconduct.

III. The Correct Burden of Proof for Finding a Violation of the Pretrial Agreement.

Before taking action on Appellant's sentence, the convening authority decided to act in accordance with the misconduct provision in the pretrial agreement and release himself from the requirement to suspend Appellant's BCD. On 28 March 2002, the convening authority

conducted a hearing to determine if misconduct had occurred, and if Appellant had committed the misconduct. Based on the evidence presented at this hearing, the convening authority found that Appellant had committed misconduct by violating Article 86, UCMJ. The convening authority forwarded his findings to the OEGCMJ with the recommendation that the sentencing limiting part of the pretrial agreement be set aside. On 12 April 2002, the OEGCMJ determined that the sentence limiting part of the pretrial agreement should be set aside because of Appellant's misconduct. On 29 May 2002, the convening authority took his action on Appellant's sentence. The convening authority approved the sentence adjudged, and did not suspend the bad conduct discharge as the sentence limiting part of the pretrial agreement required.

Appellant asserts that both the convening authority and the OEGCMJ applied an incorrect burden of proof in finding that Appellant absented herself without authority, in violation of the misconduct provision in her pretrial agreement. The convening authority made his findings based on probable cause. The record does not reveal what burden of proof the OEGCMJ applied. Appellant also claims that the OEGCMJ did not provide a sufficient written statement of the evidence relied on and the reasons for setting aside the sentence limiting part of the pretrial agreement.

The Government admits that probable cause was not the proper standard to apply in deciding that Appellant had absented herself without authority in violation of the misconduct provision in her pretrial agreement. However, the Government maintains that any error was harmless.

We view the convening authority's enforcement of the misconduct provision as more analogous to a request by the government to be excused from performing in accordance with a plea bargain than a case involving revocation of probation or parole. Because Appellant's BCD was never suspended or vacated, the procedural rules contained in Article 72, UCMJ, and RCM 1109, would not by their own terms apply to this situation. However, based on case precedent, RCM 705(c)(2)(D) states, "that the requirements of RCM 1109 must be complied with before an alleged violation [of a misconduct provision in a pretrial agreement] may relieve the convening authority of the obligation to fulfill the agreement." *See* Analysis of RCM 705(c), MCM, App. 21, at A21-40. Consistent with that, the terms of the misconduct provision also require compliance with Article 72, UCMJ, and RCM 1109. In *United States v. Smith*, 46 M.J. 263 (1997), the Court of Appeals for the Armed Forces (CAAF) affirmed a court of criminal appeals decision holding that in a case such as this the two step process involving the convening authority and the OEGCMJ, required by Article 72, UCMJ, and RCM 1109, must be followed. Therefore, even though we are not dealing with the vacation of a suspended sentence element, which explicitly falls within the scope of these rules, we find that compliance with Article 72, UCMJ, and RCM 1109 is required.

These procedural rules and the decisions of the CAAF do not provide an answer as to the appropriate burden of proof for finding that misconduct has occurred. Appellant and the Government agree that a burden greater than probable cause is required. In *United States v. DuPuis*, 10 M.J. 650 (N.C.M.R. 1980), the court held that the proper standard of proof was a preponderance of evidence, in a case involving vacation of a suspended sentence element. It is

not clear in that case if there was a pretrial agreement that required the convening authority to suspend certain sentence elements. Therefore, we do not know if that convening authority was seeking to be relieved of his obligation to comply with a pretrial agreement. We do not want to reach beyond the facts of this case.[5] In this case, the convening authority was seeking to be relieved of his obligation to comply with the sentence limiting part of the pretrial agreement. In such circumstances, we find that preponderance of the evidence is the proper standard of proof for determining if misconduct occurred.

We are not persuaded by the Government's arguments based on *Morrissey v. Brewer*, 408 U.S. 471 (1972), and its progeny, that "reasonably satisfied" is the appropriate standard of proof, because those cases deal with the due process requirements for revocation of probation or parole. Those arguments do not take account of the fact that the proceedings at issue in this case were undertaken in accordance with the terms of a pretrial agreement. Under these circumstances, we hold that the more appropriate touchstone for establishing applicable due process requirements is *Santobello v. New York*, 404 U.S. 257 (1971), and federal criminal law concerning the release of the government from compliance with the terms of a plea bargain. It appears that most federal circuits require the government to establish breach of a plea bargain by a preponderance of the evidence.[6] *See e.g. United States v. Tilley*, 964 F.2d 66, 71 (1st Cir. 1992); *United States v. Castaneda*, 162 F.3d 832, 836 (5th Cir. 1998); *United States v. Benjamin*, 138 F.3d 1069, 1073 (6th Cir. 1998); *United States v. Verrusio*, 803 F.2d 885, 894 (7th Cir. 1986); *United States v. Packwood*, 848 F.2d 1009, 1011 (9th Cir. 1988); *United States v. Hoffenberg*, 908 F. Supp. 1265, 1275 (S.D.N.Y. 1995); *United States v. Gerant*, 775 F. Supp. 182, 187 (D. Md. 1991); *United States v. San Pedro*, 781 F. Supp. 761, 772 (S.D. Fla. 1991) and Tim A. Thomas, Annotation, *Necessity and Sufficiency, in Federal Prosecution, of Hearing and Proof with Respect to Accused's Violation of Plea Bargain Permitting Prosecution on Bargained Charges*, 89 A.L.R. FED. 753 (1988). *But see United States v. Calabrese*, 645 F.2d 1379 (10th Cir. 1981)(requiring only a determination based on adequate evidence of a defendant's breach of a plea bargain).[7]

As previously noted, the discussion accompanying RCM 705(b)(C), states that the government is required to establish breach of a pretrial agreement by a preponderance of the evidence if an accused moves to dismiss a re-referred charge that had been withdrawn pursuant to that pretrial agreement. We do not see any reason to apply a less stringent standard of proof for the government to establish breach of a pretrial agreement in order to be released from its

---

[5] In other words, we express no opinion about the appropriate burden of proof in vacation proceedings under Article 72, UCMJ, and RCM 1109, when a pretrial agreement did not require suspension of the sentence element at issue in the vacation proceedings.

[6] A commentator has also suggested that the proper standard of proof is a preponderance of the evidence. Julie A. Lumpkin, *Note:The Standard of Proof Necessary to Establish That a Defendant Has Materially Breached a Plea Agreement,* 55 FORDHAM L. REV. 1059 (1987). Although we agree with her conclusion, we do not necessarily endorse all of her supporting arguments.

[7] Appellant does not assert and we do not hold that, in a case such as this, a court must make the determination that a military accused has breached a court-martial pretrial agreement. *Cf.* Article 72, UCMJ (requiring OEGCMJ to act on alleged violation of probation); Analysis of the 1994 Amendment of the Discussion accompanying RCM 705(b)(2)(C), MCM, App. 21, at A21-39 ("procedures available in Federal civilian practice, such as a motion by the government for relief from its obligation under the agreement before it proceeds to the indictment stage . . . are inapposite in military practice and thus are not required.").

obligations under the sentence limiting part of a pretrial agreement.

Although we conclude that the convening authority and the OEGCMJ did not apply the proper preponderance of the evidence standard in finding that Appellant had breached her pretrial agreement, we find that the error was harmless. The record before us includes the report that supports the action of the convening authority and the OEGCMJ. DD Form 455 and attachments. Accordingly, we can review the evidence considered by the convening authority and the OEGCMJ and determine if the evidence meets the standard of establishing by a preponderance of the evidence that Appellant breached her pretrial agreement. We find that the evidence does establish by a preponderance of the evidence that Appellant's absence from her unit between 11 March 2002 and 13 March 2002 was unauthorized, and that this misconduct breached her pretrial agreement. By a preponderance of the evidence, we find that Appellant did not take advantage of available means of returning to her unit before liberty expired. We have no doubt that the convening authority and the OEGCMJ would have found the evidence sufficient to establish that Appellant had breached her pretrial agreement if they had applied the proper preponderance of the evidence standard, rather than the probable cause standard. We find that the erroneous standard of proof did not otherwise affect their action with respect to Appellant's sentence. Therefore, we are not persuaded that Appellant is entitled to sentence relief based on the application of an erroneous standard of proof by the convening authority and the OEGCMJ.

IV. Sufficiency of the OEGCMJ's Written Statements.

We also reject Appellant's argument that the OEGCMJ did not provide a sufficient written statement of the evidence relied on and the reasons for setting aside the sentence limiting part of the pretrial agreement. The record before us shows that the OEGCMJ completed blocks 19.d. and 19.e. of DD Form 455, and made a complete written statement of the evidence he relied on and his reasons for finding that the convening authority should be released from the sentence limiting part of the pretrial agreement. The statement references the report of the convening authority and its attachments. We do not see why this should not be a permissible means of stating the evidence relied upon. Moreover, we find that the OEGCMJ's written statements together with the report of the convening authority provide a sufficient basis for any appeal Appellant might want to pursue regarding the action of the OEGCMJ and for a court such as ours to decide the appeal. Accordingly, we find that the OEGCMJ met the requirements of RCM 1109(d)(2)(A) for a written statement of the evidence relied on and the reasons for setting aside the sentence limiting part of the pretrial agreement.

V. Decision.

In light of the foregoing, and after reviewing the record in accordance with Article 66, UCMJ, we have determined that the findings and sentence are correct in law and fact, and on the basis of the entire record are affirmed.

BAUM, Chief Judge (concurring):

I concur with Judge Bruce's opinion. In particular, I agree that the proper standard for determining whether there has been a breach of a pretrial agreement's post-trial misconduct clause is a preponderance of the evidence standard. I would also apply this same standard for a violation of probation created by a suspended sentence. The convening authority and the officer exercising general court-martial jurisdiction should clearly state that this standard of proof was utilized in their determinations. Also, when finding misconduct, these officers should articulate why that misconduct constitutes a material breach of the agreement or the suspended sentence's probation. As Judge Bruce makes clear, however, we need not return the record for further development in this particular case. Depending on the facts, in another case, return of the record might be the appropriate course to take. Moreover, also depending on the facts, I may be receptive to court involvement as alluded to in Judge Bruce's footnote seven.

With respect to a pretrial agreement requiring sentence disapproval rather than suspension, I have the same serious reservations expressed by Judge Bruce. In addition to the points that he raises in footnote three, I see potential public policy issues that may be generated by allowing a convening authority to avoid his promise to disapprove a portion of a sentence after the accused has fulfilled his promise to plead guilty. A convening authority's promise to disapprove a portion of the sentence is distinctively different from a promise to suspend. With respect to a suspended sentence element, an accused undoubtedly understands that the potential for execution of that part of the sentence remains present for the fixed period of the suspension, even after the accused pleads guilty, because the convening authority has the power to vacate the suspension at any time until the period of suspension has run. However, an accused might not truly appreciate that a convening authority's promise to disapprove a sentence element is likewise conditional, until the convening authority acts, whenever the plea bargain includes a misconduct clause. Such a misunderstanding could easily occur, because when a convening authority disapproves a sentence element, that act is unconditional and the sentence element cannot be revived. I am not persuaded that the procedures in place for negotiating and enforcing pretrial agreements in court-martial cases are adequate to protect an accused from a provision that makes the convening authority's promise to disapprove a sentence element conditional for an indefinite period, until the convening authority acts. Any misconduct during this period, possibly a transgression very minor in nature, could prompt the convening authority to void his commitment and render much of the accused's consideration for pleading guilty illusory. The judge's explanation to the accused must convey this reality. Moreover, an accused's understanding of the true nature of the plea bargain, which contains a misconduct provision and also calls for disapproval of a portion of the sentence must be supported by the record. The voluntary acceptance of the sentence uncertainty such an agreement produces must also be supported by the record. Otherwise, voluntariness of the guilty plea may become a paramount issue. These concerns are not present in the case before us now, but trial participants, convening authorities, and staff judge advocates should be alert to their possibility in future cases.

KANTOR, Judge (concurring):

I fully concur with the decision to reject the assignments of error concerning the enforcement of the misconduct provision of the pretrial agreement. I also agree with the requirement of finding a material breach of the plea agreement before the Government can be excused from its obligations. Such a standard is helpful in preventing arbitrary revocations of such agreements. Furthermore, an unauthorized absence of just less than three days does, in my view, constitute a material breach. I also concur that the appropriate standard for determining if misconduct occurred in this case is preponderance of the evidence. My one concern with the lead opinion is its possible inference that a misconduct provision is only appropriate when linked to situations involving suspension of sentence and not other sentence limiting provisions, such as disapproval. RCM 705(c)(2)(D) specifically sanctions a misconduct provision and does not restrict its use solely to suspended sentences. I see no reason to discourage the use of such agreements, nor restrict their use to situations only involving a suspension of sentence.



For the Court,

Roy Shannon, Jr.
Clerk of the Court